346 A.2d 9

**In re William FALONE.**

**Appeal of COMMONWEALTH of Pennsylvania.**

Supreme Court of Pennsylvania.

Argued May 8, 1975.

Decided Oct. 3, 1975.

44

Walter M. Phillips, Jr., Deputy Atty. Gen., Peter Noel Duhamel, Asst. Atty. Gen., Philadelphia, for appellant.

Herbert K. Fisher, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On October 29, 1974, appellee William Falone was called to testify before the January, 1974, Special Investigating Grand Jury of Philadelphia, which was investigating official corruption in Philadelphia. See generally *In re Investigation of the January, 1974, Philadelphia Grand Jury*, 458 Pa. 586, 328 A.2d 485 (1974). He was questioned concerning bribes allegedly paid to certain members of the Philadelphia Police Department in consideration for nonenforcement of laws prohibiting gambling. Falone invoked his privilege against self-incrimination [1] and refused to testify.

The Commonwealth immediately petitioned the judge supervising the grand jury to grant immunity to Falone and to order him to testify, pursuant to the Act of November 22, 1968, P.L. 1080, 19 P.S. §§ 640.1–.6 (Supp. 1974). The petition was signed by then-Attorney General Israel Packel and verified by the affidavit of an assistant attorney general. It stated that the grand jury was reliably informed that Falone "is a member of organized crime who directs a major gambling operation in West Philadelphia" and that he "has conspired with other organized crime figures to make payments of money to members of the Philadelphia Police Department for the purpose of influencing them in the performance of their official duties." The petition asserted that Falone's tes-

---

1. See U.S.Const., amend. V; Pa.Const., art. I, § 9. The states are prohibited to infringe the privilege by U.S.Const., amend. XIV. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

timony was necessary for the grand jury to perform its function of investigating police corruption.

An immediate hearing was held at which the supervising judge disclosed that an attorney for the Commonwealth had presented to him *in camera* the grounds upon which a grant of immunity was sought and the need for immunization. Falone's counsel informed the court that he was unprepared to argue in opposition to a grant of immunity. The court accordingly continued the hearing until November 1. On that day the court afforded Falone the opportunity to present testimony and argument why he should not be immunized.

On November 4, the court granted the petition, ordered Falone to testify, and conferred the immunity from prosecution permitted by the Act. Falone was called before the grand jury on November 6 and questioned, but he again invoked his privilege against self-incrimination and refused to testify. The Commonwealth immediately petitioned the court to hold Falone in contempt. A hearing was convened, but Falone's counsel protested that he was unprepared to conduct a defense. The court continued the hearing until November 8.

When the hearing resumed, the court gave Falone a further opportunity to answer the grand jury's questions, but he again refused. The court found Falone to be in contempt of court and ordered him to be incarcerated in the county jail for a period of six months or until he purged himself by testifying or until the term of the grand jury expired.

Falone appealed to the Superior Court, which reversed the order of contempt and discharged him.[2] 231 Pa.Super. 388, 332 A.2d 558 (1975). The Commonwealth petitioned this Court for allowance of an appeal,[3] which we

2. Judge Jacobs dissented.

3. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1974).

granted. Recognizing the need for an expeditious resolution of this appeal, we filed an order on July 7, 1975, reversing the order of the Superior Court's order and reinstating the order of the court of common pleas. We noted these opinions would follow.

We must preliminarily determine the manner in which the Act is to be construed. The Superior Court stated:

"[S]erious Fifth Amendment rights are involved in that under the Pennsylvania Immunity Act a person can be compelled to give testimony against himself. It follows that a statute conferring such power must be strictly construed by the government in order to minimize the judicial abuse of power which could occur otherwise. . . .

[B]ecause of [the Act's] exceptional nature and because it deals with basic constitutional rights, it must certainly require strict construction."

231 Pa.Super. at 393, 332 A.2d at 561.

██ That court's conclusion that the Act must receive a "strict construction" is based on an erroneous view of immunity and the privilege against self-incrimination. It is incorrect that under the Act "a person can be compelled to give testimony against himself" in the constitutional sense. When a witness receives a grant of immunity from prosecution that is at least as broad in scope and effect as the privilege against self-incrimination, his privilege is completely displaced because he has "complete protection from all the perils against which the [privilege] was designed to guard." [4] *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); *Kastigar v. United States*, 406 U.S. 411, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *Gardner v. Broderick*, 392 U.S. 273, 276, 88 S. Ct. 1913, 1915, 20 L.Ed.2d 1082 (1968) (dictum); *Mur-*

4. *Counselman v. Hitchcock*, 142 U.S. 547, 586, 12 S.Ct. 195, 206, 35 L.Ed. 1110 (1892).

48

*phy v. Waterfront Commission of New York Harbor,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) ; *Ullmann v. United States,* 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956) ; *Hale v. Henkel,* 201 U.S. 43, 65–70, 26 S.Ct. 370, 375–77, 50 L.Ed. 652 (1906); *Brown v. Walker,* 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896) ; *Counselman v. Hitchcock,* 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892); *Riccobene Appeal,* 439 Pa. 404, 410, 268 A.2d 104, 108 (1970) (opinion announcing the judgment). A grant of immunity is sufficient to supplant the privilege if the witness is protected against use of the compelled testimony and all its fruits. *Kastigar v. United States,* supra. Immunity granted under the Act is "transactional" immunity,[5] *Riccobene Appeal,* supra, 439 Pa. at 412, 268 A.2d at 109, and thus is more extensive than necessary to displace the privilege.

As the Supreme Court stated in *Kastigar v. United States,* supra:

"[The] sole concern [of the privilege against self-incrimination] is to afford protection against being 'forced to give testimony leading to the infliction of "penalties affixed to . . . criminal acts." ' Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness."

406 U.S. at 453, 92 S.Ct. at 1661 (footnote omitted).

Accordingly, a witness who is compelled to testify under the Act is not testifying "against himself" in the constitutional sense, because his testimony cannot result in

5. "Transactional" immunity is "immunity from prosecution for offenses to which compelled testimony relates . . . ." *Kastigar v. United States,* 406 U.S. 441, 443, 92 S.Ct. 1653, 1655, 32 L.Ed.2d 212 (1972).

the infliction of criminal penalties. Thus, it is not necessary to accord the Act a "strict construction" for the protection of the privilege against self-incrimination. We can perceive no reason why the Act should not "be liberally construed to effect [its] objects and to promote justice." Statutory Construction Act, 1 Pa.C.S. § 1928(c) (Supp.1974). *Cf. United States v. Chavez,* 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974).

■ The Superior Court reached its result on the ground that the Commonwealth's petition did not comply with the Act. Specifically, it noted that, under section 2 of the Act, 19 P.S. § 640.2,[6] a petition for a grant of immunity must be filed by the Attorney General. It reasoned that the petition was required under the Act of April 9, 1915, P.L. 72, 12 P.S. § 514 (1973),[7] and Pa.R. Civ.P. 206 [8] & 1024 [9] to be verified, and that, under Rule

6.  "The Attorney General may petition the court of the county in which such proceedings are being conducted for an order requiring any person to testify or produce evidence, which petition may be joined in by the district attorney of the county where such proceedings are being conducted. Such petition shall set forth the nature of the investigation and the need for the immunization of the witness."

7.  "A judge of any court of record shall not, in any matter, case, or proceeding before him, receive or consider any petition, or paper in the nature of a petition, alleging any matter of fact, unless the petition or paper is duly verified as to such allegations."

8.  "Every petition and answer containing allegations of fact which do not appear of record shall be verified by affidavit."

9.  "(a) Every pleading containing averments of facts not appearing of record in the action or containing denials shall be verified on oath or affirmation that the averments or denials are true upon the affiant's personal knowledge or information and belief. The affiant need not aver the source of his information or expectation of ability to prove the averments or denials at the trial. A pleading may be verified upon personal knowledge as to a part and upon information and belief as to the remainder.

. . . . . . . .

"(c) The verification shall be made by one or more of the parties filing the pleading unless all the parties (1) lack sufficient knowledge or information, or (2) are outside the jurisdiction of the court and the verification of none of them can be obtained within the time allowed for filing the pleading. In such cases, the verification may be made by any person having sufficient

1024(c), the verification should have been by the Attorney General or should have conformed to the requirements of Rule 1024(c) for verification by one not a "party."

> "Only the 'Attorney General' is designated as the petitioning party so that he is the only party to the proceeding and under Rules 206 and 1024 of the Pennsylvania Rules of Civil Procedure he should have been the one to verify the facts contained in the petition unless cogent reasons were set forth as to why his verification does not appear.

> \*      \*      \*      \*      \*      \*      \*      \*

> "To be effective in this petition, this verification by one other than the Attorney General must set forth the reasons why the petitioner, the Attorney General, failed to take the affidavit, the basis for the third parties' [sic] authority to take the affidavit and the nature and source of the knowledge upon which the verification is based."

231 Pa.Super. 393, 332 A.2d at 561.

Because the affidavit verifying the Commonwealth's petition was not made by the Attorney General and did not comply with the requirements of Rule 1024(c) for a non-party affidavit,[10] it was held that the petition was not that of the Attorney General, and was thus deficient under the Act. That deficiency, in the Superior Court's

> knowledge or information and belief and shall set forth the source of his information as to matters not stated upon his own knowledge and the reason why the verification is not made by a party." ·

**10.** The affidavit attached to the petition filed on October 29 consisted only of a statement by the assistant attorney general that "the facts set forth in the foregoing petition are true and correct to the best of his knowledge, information and belief." On November 4 before the court issued its grant of immunity and order to testify, the Commonwealth filed an amended petition identical in all respects to the earlier petition except that the affidavit included an averment that the affiant "makes this affidavit on his own behalf as well as on behalf of Israel Packel, Attorney General, being thereunto duly authorized . . . .."

view, rendered the trial court's order ineffective to confer immunity, and Falone was therefore constitutionally entitled to persist in refusing to testify. We conclude that the Superior Court erred in holding the petition deficient under the Act.

It is true that any petition "alleging any matter of fact" must be "duly verified as to such allegations." Act of April 9, 1915, P.L. 72, 12 P.S. § 514 (1953).[11] However, the Act of 1915 does not specify the required form of verification, and in particular it does not indicate who must verify the alleged facts. Nor does the immunity Act specify the manner of verification. The Superior Court looked for guidance to Pa.R.Civ.P. 1024, but, in our view, petitions for grants of immunity ought not be burdened with the niceties of civil pleading. We conclude that the purposes of both the Act of 1915 and the immunity Act are adequately served by the procedure here employed.

The purpose of the statutory requirement that the Attorney General petition under the Act is not difficult to discern. A grant of immunity from prosecution as to "any transaction, matter or thing concerning which he is compelled . . . to testify" (19 P.S. § 640.3 [12]) is an extraordinary act of absolution. The decision to seek immunity requires a delicate balancing of the expected

11. From its position in the unofficial codification as 12 P.S. § 514 in the context of a title labelled "Civil and Equitable Remedies and Procedures," the Act of 1915 might appear to apply only to civil actions. However, what appears in Purdon's Statutes as § 514 was not enacted by the Legislature in that context. As enacted, the Act of 1915 is neither by its terms nor by context limited to civil actions. See Laws of Pennsylvania, at 72 (1915).

12. "No such witness shall be prosecuted or subjected to any penalty or forfeiture nor shall there be any liability on the part of and no cause of action of any nature shall arise against any such witness for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding against him in any court."

value of the witness's testimony against forfeiture of the ability to prosecute the witness for crimes about which he might testify. Cf. *Riccobene Appeal*, supra, 439 Pa. at 418, 268 A.2d at 112. The Legislature concluded that for such an extraordinary and sensitive decision responsibility should lie with the Commonwealth's chief law enforcement officer, the Attorney General. Cf. *United States v. Giordano*, 416 U.S. 505, 512, 94 S.Ct. 1820, 1825–30, 40 L.Ed.2d 341 (1974). In this case, the petition requesting the court to confer immunity and order Falone to testify was signed by Attorney General Israel Packel. The purpose of requiring the Attorney General to stand responsible for the petition is effectuated.

■ That purpose would not be further served by requiring that the Attorney General also verify the petition; his signature on the petition is surely sufficient to render him responsible for the decision to seek immunity. Furthermore, as a general rule, affidavits must be executed by one who possesses personal knowledge of the facts alleged in the petition. See Pa.R.Crim.P. 304(c); Pa.R.Civ.P. 1024. It would be unrealistic to expect the Attorney General to possess personal knowledge of the details of "the nature of the investigation and the need for the immunization of the witness" (19 P.S. § 640.2) concerning investigations underway throughout the Commonwealth and all witnesses in those investigations. The more realistic expectation is that personal knowledge will be possessed by the Attorney General's subordinates who are actually involved in the conduct of the investigations, which knowledge, when related to the Attorney General, will enable him to make the decision whether immunity shall be sought. The Act, when liberally construed to effectuate its purposes, requires no more than that the petition and verification reflect this reality.

The petition here satisfied the immunity Act and the Act of 1915. The Attorney General signed the petition

requesting a grant of immunity. The verifying affidavit was executed by an assistant attorney general actually involved in the grand jury's proceedings. No more is required.

■ Our conclusion that the petition was adequately verified removes the ground upon which the Superior Court's order rests. However, Falone offers several other theories not passed upon by the Superior Court which, if meritorious, would be sufficient to require affirmance.[13] We conclude that they are not meritorious.

■ First, he argues that the petition was not signed by the Attorney General because Israel Packel was not legally holding the office of Attorney General at the time of the filing of the petition under *Frame v. Sutherland*, 459 Pa. 177, 327 A.2d 623 (1974). This argument is without merit. The record is barren of any evidence concerning the circumstances of Mr. Packel's appointment. His appointment was not before the *Frame* Court, and we have not been informed of any other proceeding in quo warranto in which his right to have held the office was challenged. In any event, assuming arguendo that Mr. Packel's appointment suffered from the same defect as the defendants' appointments in *Frame*, he was at least a *de facto* officer at the time of the filing of the petition in this case, and thus his public acts possess the same validity as if he had been validly appointed. Falone's argument is completely disposed of by *Commonwealth ex rel. Palermo v. Pittsburgh*, 339 Pa. 173, 13 A.2d 24 (1940) (holding the public acts of the Pittsburgh director of public safety were valid even if his purported "recess appointment" by the mayor or was invalid because the city council was not in fact in recess), a

13. We will affirm the judgment, order, or decree of the court below if the result is correct for any reason without regard to the ground relied upon by that court. *Gilbert v. Korvatte, Inc.*, 457 Pa. 602, 604 n. 5, 327 A.2d 94, 96 n. 5 (1974); *Prynn Estate*, 455 Pa. 192, 197 n. 9, 315 A.2d 265, 267 n. 9 (1974).

case identical in all material respects with *Frame*. See also *Pleasant Hills Borough v. Jefferson Township*, 359 Pa. 509, 512–13, 59 A.2d 697, 699–700 (1948), and cases cited therein.

Second, Falone argues that the trial court was without authority to grant immunity because the petition did not establish as a fact that he was involved in "organized crime or racketeering," citing *Commonwealth v. Brady*, 228 Pa.Super. 233, 323 A.2d 866 (1974).[14] This argument rests on a misunderstanding of the role that "organized crime or racketeering" plays in the structure of the Act. It provides in section 1 that grants of immunity and orders to testify are available "in a proceeding relating to organized crime or racketeering before a . . . grand jury . . . ."[15] Section 6 defines "organized crime or racketeering" to include "bribery or extortion."[16] Among the areas being investigated by the grand jury are "bribery and corruption in the Philadelphia Police Department" and "extortion by officers and employees of . . . law enforcement agencies." *In re Investigation of the January, 1974, Philadelphia Grand Jury*, 458 Pa. 586, 590 n. 1, 328 A.2d 485, 487 n. 1

14. Allocatur was granted in *Brady*, which is now pending before this Court.

15. "If, in a proceeding relating to organized crime or racketeering before a court, grand jury or investigating body set up by a legislative enactment or by order of the Governor, any person shall refuse to testify or to produce evidence of any other kind on the ground that his testimony or evidence may tend to incriminate him, that person may be ordered to give such testimony. The order to testify shall not be given except upon an order of court after a hearing in which the attorney general has established a need for the grant of immunity, as hereinafter provided." 19 P.S. § 640.1.

16. "As used in this act—
'Organized crime' and 'racketeering' shall include, but not be limited to, conspiracy to commit murder, bribery or extortion, narcotic or dangerous drug violations, prostitution, usury, subordination of perjury and lottery, bookmaking or other forms of organized gambling." 19 P.S. § 640.6.

(1974).[17]   We conclude that the proceeding in which Falone's testimony is sought is "a proceeding relating to organized crime or racketeering before a . . . grand jury" within the meaning of the Act.   See also Crimes Code, 18 Pa.C.S. § 911 (h) (*l*) (i) (1973).

■   Third, Falone argues that the petition was fatally defective in that its "conclusionary allegation" that "it is necessary to take sworn testimony from Mr. Falone" is inadequate to satisfy the Act's requirement that the petition "set forth . . . the need for the immunization of the witness" (19 P.S. § 640.2).   He misunderstands both the statute and the petition.   The Act requires the petition to set forth the need for immunization, not the need for the testimony.   This petition adequately sets forth the need for immunization; it recites 1) that the grand jury is mandated to investigate police corruption;  2) that the grand jury was reliably informed that Falone had participated in a conspiracy to bribe members of the Philadelphia Police Department, from which it may be inferred that he possessed information relevant to the subject of the investigation;  3) that obtaining Falone's information was necessary to carry out the grand jury's mandate; and 4) that Falone, by invoking his privilege against self-incrimination, had shown that the information possessed by him would not be disclosed absent immunity.[18]   Thus, the petition, read

17.  As previously noted, the Attorney General previously noted, the Attorney General averred in the petition that Falone "has conspired with other organized crime figures to make payments of money to members of the Philadelphia Police Department for the purpose of influencing them in the performance of their official duties."

18.  In fact, the written petition failed to allege that Falone had invoked his privilege and refused to testify.   However, this deficiency was instantly cured.

An allegation that the witness has invoked his privilege is necessary for an adequate demonstration of need for immunization; obviously, if the witness will testify without immunity (which is not known to be false unless the witness has already been questioned and refused to answer), immunization is unnecessary.

as a whole, alleges that immunization is necessary for the grand jury to obtain information that is relevant to its inquiry from a witness who, it is reliably informed, possesses it. The Act requires no more.

Finally, Falone argues that the grant of immunity and order to testify were ineffective because the court failed to hold a hearing as required by the Act. Section 1 of the Act provides:

"The order to testify shall not be given except upon an order of court after a hearing in which the attorney general has established a need for the grant of immunity . . . ."

Falone claims that the Commonwealth's failure to present evidence in an adversary proceeding in open court establishing the need for immunization constitutes a violation of section 1. We disagree.

The purpose of the "hearing" requirement is plain. The Legislature recognized that a grant of immunity is an extraordinary benefit conferred on the witness. The public interest is usually best served by prosecuting persons guilty of crime, but in certain limited circumstances the public interest may require the conferral of that benefit in return for disclosure of information in the witness's possession. The Legislature was not satisfied to entrust the determination that those limited circumstances exist to law enforcement officials alone. Therefore, the Act provides that the Attorney General's

---

Furthermore, an allegation that the witness has refused to testify is indispensable because grants of immunity are available under the Act *only* if "any person shall refuse to testify . . . on the ground that his testimony . . . may tend to incriminate him . . . ." 19 P.S. § 640.1.

The facial defect was cured when, in the immediate hearing that occurred in open court, an assistant attorney general informed the court that the witness had invoked the privilege against self-incrimination. Although this assertion was not "verified" as was the written petition, it was immediately proven when the stenographer who had been present in the grand jury room read to the court the questions that had been asked and Falone's refusals to answer.

decision that immunization is necessary is subject to the approval of the court.[19]

The "hearing" requirement is designed solely to serve as the means of conveying to the court information to enable it to perform its independent approval function. It was not designed to provide an adversary proceeding in which a witness could contend, in opposition to the Commonwealth's presentation, that there is no need for immunization. See *Riccobene Appeal*, supra, 439 Pa. at 418, 268 A.2d at 112; *Martorano Appeal*, 225 Pa.Super. 474, 483–84, 310 A.2d 683, 688 (1973). Accordingly, if the Commonwealth establishes to the satisfaction of the court, in a manner satisfactory to the court, that immunization is necessary, the purpose of the "hearing" requirement is effectuated, and no more is required.

" 'The public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege . . . ." *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). After Falone's privilege against self-incrimination had been fully protected by a grant of immunity under the Act, the grand jury had a right to his evidence.

In accordance with the order of July 7, 1975, the order of the Superior Court is reversed; the order of the Court of Common Pleas of Philadelphia finding appellee in contempt of court is reinstated.

NIX, J., files a dissenting opinion in which EAGEN, J., joins.

MANDERINO, J., did not participate in the consideration or decision of this case.

NIX, Justice (dissenting).

19. Compare 18 U.S.C. § 6003.

## I.

Today's result gives judicial sanction to a procedure I thought had never been embraced in American Jurisprudence and had long ago been discarded in English Jurisprudence. I agree with the opinion of the Superior Court that the in camera hearing between the Deputy Attorney General and the supervising judge that occurred in the instant case smacks of the much abhorred "star chamber" proceedings and fails to carry out the legislative provision for a hearing prior to the granting of immunity. For the reasons articulated below I must dissent.

The Act of November 22, 1968, P.L. 1080, 19 P.S. § 640.1 (Supp.1974–75), provides that:

"Organized crime or racketeering; order to testify

If, in a proceeding relating to organized crime or racketeering before a court, grand jury or investigating body set up by legislative enactment or by order of the Governor, any person shall refuse to testify or to produce evidence of any other kind on the ground that his testimony or evidence may tend to incriminate him, that person may be ordered to give such testimony. *The order to testify shall not be given except upon an order of court after a hearing in which the attorney general has established a need for the grant of immunity, as hereinafter provided.*" (Emphasis Supplied).

In Falone's case, virtually the entire hearing was an in camera presentation of information to the supervising judge by a Deputy Attorney General. Falone requested a full adversary hearing at which both sides might present some form of evidence. The following comments by the supervising judge indicate he was fully aware of Falone's position:

"I understand Mr. Fisher's [Falone's counsel] position and request. The answer is negative. I will not have

an open hearing. I will not have the kind of evidentiary hearing that Mr. Fisher is suggesting. (R. 16a)."

In response to Falone's objection the court stated:

"Now, during the course of that colloquy, it was made known to me by the deputy attorney general as to: A, the area of the proposed inquiry; B, the anticipation that the witness would in truth and in fact appropriately invoke his constitutional privilege; and C, that should that be the fact, that the deputy attorney general was prepared to submit a petition for the immunity.

"I questioned the deputy attorney general upon which any grant of immunity is sought. *There was then a disclosure to me in camera of those which I have made reference.* This doesn't come to me as a bolt of lightning out of heaven, by an instantaneous act of spontaneous events, but with forewarning as to what we were about to have." (Emphasis added).

While it is obvious that the Court received its information from a mortal source, it is equally clear the appellee and his counsel would have been required to have had divine powers of perception to ascertain the minimum quantum of information pertaining to these proceedings to even resemble an adversary hearing. Such is not a requirement of our law. The effect of the Court's rulings was to inhibit the defense in two respects; 1) the defense has not heard the case presented by the Deputy Attorney General and does not know what contentions to rebut or how to persuade the court to rule his way and 2) the record is insufficient for the defendant to formulate meaningful arguments on appeal and for an appellate court to decide whether the supervising judge exercised sound discretion. The appellee argues forcefully that the hearing he received was constitutionally inadequate because it did not comport with standards of due process required by the United States and the Commonwealth of Pennsylvania Constitutions. More specifically,

it is contended that the hearing provided for in 19 P.S. § 640.1, *supra,* must include the production of evidence in an adversary posture and, at a minimum, must provide for a clear record in order for appellee to exercise his right to appeal in a meaningful fashion. Appellee finds the in camera procedure utilized here most objectionable for it deprives him of a realistic opportunity to contest the petition and deprives any appellate court of a record upon which to exercise meaningful appellate review. I agree. The in camera procedure resembles too closely the horrors of the inquisition.

In *Unora v. Glen Alden Coal Company,* 377 Pa. 7, 104 A.2d 104 (1954), we considered the adequacy of a hearing under the Pennsylvania Occupational Disease Act. In defining the parameters of a constitutionally adequate hearing we stated:

In law, where a controversy is involved, a hearing intends a judgment bench attended by judges or officials sitting in a judicial capacity, prepared to listen to both sides of the dispute and to consider deeply, reflect broadly, and decide impartially. Studying papers is not a hearing; passing on a report moving across one's desk is not a hearing. The very genius of American jurisprudence shines in the opportunity it affords every litigant to present his case openly, publicly and untrammedly. This concept was well stated by the Supreme Court of Montana in the case of *Grant v. Michaels,* 94 Mont. 452, 23 P.2d 266: "The power 'to "hear and determine" is an essential ingredient of jurisdiction, and the quoted words refer to a judicial investigation and settlement of an issue of fact, which implies the *weighing of testimony offered on both sides,* from a consideration of which the relief sought by the moving party is either granted or denied' ". (Emphasis supplied.)

The failure of the Medical Board to hear the claimants or their counsel is not merely an academic error; it is

one of substance. A hearing is not granted to a litigant simply to provide him with a forum for rhetorical expression. The right to be heard constitutes not only the right to talk; it includes the right on the part of the litigant to listen to what the tribunal has to say and to offer advice and counsel. The right to be heard encompasses the right also to give ear to one's adversary and to object, if necessary. 377 Pa. at 11–12, 104 A.2d at 106.

More recently, in *West Alexander Borough Annexation Case*, 450 Pa. 453, 301 A.2d 662 (1973), we reaffirmed the principles articulated in *Unora v. Glen Alden Coal Company, supra*. It appears to me that the in camera proceeding that took place in the instant case cannot begin to meet the due process standards that we in the past have required of a hearing in this Commonwealth.

The majority concedes that the hearing in the instant case was only a charade and could by no standards comport with the dictates of due process. They, however, attempt to avoid the consequences of this dilemma by rationalizing that the grant of immunity is not a deprivation of a right and therefore assert that no hearing was required. This argument, however, loses sight of the obvious fact that whether a hearing was required constitutionally or as a result of policy, it was nevertheless the intention of the legislature to provide such a right. This intention cannot be ignored through judicial interpretation.

Under the unambiguous language of § 640.1, it is clear that a hearing was required as an integral part of the procedure in the grant of immunity. It equally follows that since the instant charge of contempt is predicated upon a grant of immunity under this section, the alleged contemnor has a right to attack the validity of that grant.

Restated, with respect to contempt for failure to answer questions after a grant of immunity the legislature

has, in essence, added the requirement that there be a hearing in which the Attorney General must establish a need for the grant of immunity. Even accepting, although I do not, the majority's theory that the grant of immunity is not a deprivation of the prospective witnesses' right, the hearing requirement mandated by the legislature remains unaltered. This fact was recognized by a plurality of this Court in *Riccobene Appeal*, 439 Pa. 404, 268 A.2d 104 (1970).[1] In the late Chief Justice Bell's opinion in *Riccobene Appeal, supra*, after alluding to the "benefit theory" we observed:

> "The ultimate finding of need lies with the Court, and an opportunity is afforded a witness to a hearing and, if desired, a brief and an oral argument to support his contentions that there is no need in his particular case." 404 Pa. at 417, 268 A.2d at 111.

Even though a plurality of the Court indicated that the hearing was primarily between the Attorney General and the supervising judge it still required a hearing in which some evidence was produced in an adversary contest.[2] The hearing in the instant case is far removed from the one in *Riccobene Appeal, supra*.

Furthermore, for appellee to have his right to a meaningful appeal pursuant to *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and *Griffin v.*

---

1. In *Riccobene Appeal*, 439 Pa. 404, 268 A.2d 104 (1970), three Justices joined an opinion by Chief Justice Bell; one Justice concurred in the result and three Justices dissented. Thus, as a plurality opinion the decision carries no binding precedential weight.

2. It is clear that the bearing in Riccobene Appeal, *supra*, was infinitely more expansive than that permitted in the instant case. "To further substantiate this need the District Attorney presented Sergeant William Smith, of the Intelligence Unit of the District Attorney's office. Sergeant Smith testified that for over a year he had been investigating transactions relating to the Whitman Urban Renewal Area. He further testified that he had received information that the proposed witness, Mario Riccobene, was a witness to a bribe paid by one Angelo Bruno to a public official of the City of Philadelphia to influence official conduct to benefit land owned by Bruno and others within the Whitman Urban Renewal Area." 404 Pa. at 419, 268 A.2d at 112.

*Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), an adequate record must be preserved for appeal. As Justice Roberts recently noted in writing for the majority in *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974):

> " 'Appellate review has become such an integral part of our criminal procedure that it may properly be viewed as an extension of the trial itself.' *Commonwealth ex rel. Neal v. Myers*, 424 Pa. 576, 579 n. 3, 227 A.2d 845, 846 n. 3 (1967). The fundamental tool for appellate review is the official record of what occurred at trial. Only the facts that appear in this record may be considered by a court. As recently as *McCaffrey v. Pittsburgh Athletic Association*, 448 Pa. 151, 293 A.2d 51 (1972), this Court held that 'it is black letter law that an appellate court cannot consider anything which is not a part of the record in the case.' Id. at 162, 293 A.2d at 57. Consistent with our responsibility to view only the record facts, we cannot accept the assertions in the trial court's written opinion that any reasonable doubt instruction was given other than that which appears in the record.
>
> "Because of the impact that the reasonable doubt standard has on the ultimate resolution of a defendant's guilt or innocence, the omission of an essential portion of a charge on reasonable doubt deprived appellant of a fair trial. Accordingly, appellant is entitled to a new trial. 456 Pa. at 114–116, 317 A.2d at 264."

Here appellee comes before us alleging inequality in a proceeding which resulted in his conviction for contempt below. Needless to say, for us to adequately review appellee's present claims, particularly those relating to whether the instant proceeding was one relating to organized crime and/or racketeering and whether there was a need for immunity, we must have access to what transpired in the in camera hearing. Without such ac-

cess preserved by an adequate record, we cannot exercise our judicial function which in this case requires us to determine whether the immunity was properly conferred, thus placing upon him the duty to speak. The majority, however, has proceeded to make the finding that his refusal to speak was contemptuous without a scintilla of evidence before it to determine the pivotal question of whether the immunity had been properly granted.

## II.

My second major objection to today's result is with the construction the majority gives to § 640.6. This section provides in pertinent part:

"As used in this act—
'Organized crime' and 'racketeering' shall include, but not be limited to, conspiracy to commit murder, bribery or extortion, narcotic or dangerous drug violations, prostitution, usury, subornation of perjury and lottery, bookmaking or other forms of organized gambling." 19 P.S. § 640.6.

It is beyond me how the term conspiracy in this statute can be construed to modify only the crime of murder. It seems clear to me that the legislative intent was to grant immunity only in those cases where there was a true conspiracy to commit the substantive offenses listed therein. The principal evil the Act sought to cure was vast networks of well conceived criminal ventures by those involved in organized crime. To find, as the majority does today, that conspiracy modified *only* the substantive crime of murder and to support this finding by reasoning that the legislature intended to grant immunity when the substantive crimes of bribery and narcotics offenses were committed, defies logic. This reasoning would leave the substantive crime of murder unreachable under this Act. My construction would include all of the crimes listed as long as there was a conspiracy to commit them.

Moreover, in reaching their conclusion the majority relies on a technique of statutory construction unknown to me—namely, definition by reference to *subsequent* legislation. In the Rules of Construction, Act of November 25, 1970, P.L. 707, No. 230, added 1972, Dec. 6, No. 290, § 3, 1 P.S. § 1921(c), the legislature provided for techniques of statutory construction. Subdivision (c) provides:

"(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statutes."

Where the legislature has obviously given careful thought to the types of techniques available in statutory construction and has specifically enumerated eight separate ones including one that *former* law on similar subjects may be used as a reference and, yet, never mentions the possibility of using *subsequent* law, I believe it should not be used. The inference suggested by the majority as to the construction of § 640.6, *supra,* does not correspond to the true spirit of the statute.

For these reasons I must dissent from today's result.

EAGEN, J., joins in this dissenting opinion.