## Salvitti Appeal.

Argued September 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Nicholas J. Nastasi,* for appellant.

*Nancy J. Moore,* Assistant Attorney General, with her *Ben W. Joseph,* Assistant Attorney General, and *Walter M. Phillips, Jr.,* Deputy Attorney General, for appellee.

OPINION BY SPAETH, J., February 24, 1976:

This is an appeal from an order citing appellant for civil contempt.

On February 20 and April 15, 1975, appellant was served by the Office of the Special Prosecutor with subpoenas duces tecum calling for the production before the 1974 Special Investigating Grand Jury of certain appointment books and calendars. On April 25, counsel for appellant filed a motion to quash the subpoenas, and a hearing on the motion was held on April 30. At the hearing, at the suggestion of appellant's counsel, the court heard *ex parte, in camera* testimony from the Office of the Special Prosecutor on the relevancy of the books and calendars. On the basis of this testimony, the court ordered appellant to produce the books and calendars on May 7. On May 6, appellant requested a copy of the *in camera* transcript; the request was denied. On May 7, appellant refused to produce the books and calendars, and on May 9, the contempt citation issued.

The sentence imposed by the lower court was that appellant be confined in prison for six months or "until he has purged himself of [his civil contempt] by making himself available for testimony and testifying and producing records as ordered, or until the expiration of [the

1974 Special Investigating Grand Jury], whichever is sooner." The 1974 Special Investigating Grand Jury has expired. Therefore, appellant can no longer purge himself by appearing before it.[1]

It might be concluded from this fact that the appeal has become moot.[2] I do not think so, however. Although the 1974 Special Investigating Grand Jury has expired, a new Special Investigating Grand Jury has been convened, and it may be assumed that the Special Prosecutor will pursue the investigation here involved. In addition, the principal issue presented by this appeal is what showing of relevancy must be made by the Special Prosecutor in support of a subpoena duces tecum. This issue will constantly recur as the Special Prosecutor's investigation continues. Thus the subject of this appeal may fairly be regarded as representing a continuing controversy that involves important constitutional questions and affects a large number of persons. In such circumstances, the appeal should not be declared moot. *Sosna v. Iowa,* 419 U.S. 393 (1975) (issue of validity of state statute imposing residency requirement for divorce not rendered moot by fact that pending appeal plaintiff had satisfied requirement); *Roe v. Wade,* 410 U.S. 113 (1973) (issue of validity of state statute forbidding abortion not rendered moot by fact that plaintiff no longer pregnant); *Commonwealth ex rel. Finken v. Roop,* 234 Pa. Superior

---

1. For this reason, the dissent's proposed order that the case be "remanded to the lower court for compliance with sentence imposed" would be futile.

2. Had appellant been found guilty of criminal contempt, this possibility would not be presented. "[A] contemnor who will be sentenced to a determinate term of imprisonment or a fixed fine . . . is powerless to escape by purging himself of his contempt . . ." *In Re Martorano,* 464 Pa. 66, 80, 346 A.2d 22, 29 (1975) (discussing the civil-criminal classification of contempt). The Commonwealth asked the lower court to find appellant guilty of criminal contempt, but the lower court refused to do so, finding only civil contempt.

Ct. 155, 162 n. 4, 339 A. 2d 764, 767-768 n. 4 (1975) (issue of validity of mental health act not rendered moot by fact that relator no longer committed to state hospital).

In my view, it was not sufficient for the Special Prosecutor to satisfy the supervising judge in an *in camera* proceeding of the relevance of the materials demanded by the subpoena. The procedure I believe should have been followed is that prescribed in *In Re Grand Jury Proceedings (Schofield)*, 486 F. 2d 85 (3d Cir. 1973).

There, Jacqueline Schofield was subpoenaed to appear for the purpose of testifying in a federal grand jury investigation. When she appeared, she was not asked to testify but to submit handwriting exemplars and to allow her fingerprints and photograph to be taken. She refused, and was held in civil contempt. On appeal she argued, as she had below, that before she could be required to comply with the Government's request, the Government should state the purpose and necessity for the request. The Government argued that it was under no such obligation. The Court of Appeals held:

> "[W]e think it reasonable that the Government be required to make some preliminary showing by affidavit that each item is at least relevant to an investigation being conducted by the grand jury and properly within its jurisdiction, and is not sought primarily for another purpose. . . . We do not rule out the possibility that the Government's affidavit may be presented to the court *in camera,* but we do hold that Rule 6 (e) [of the Federal Rules of Criminal Procedure] does not require *in camera* presentation. There is a difference between disclosing 'matters occurring before the grand jury' and disclosing that the matters requested by the subpoena are relevant to an investigation that it is conducting. Thus unless extraordinary circumstances appear, the nature of which we cannot anticipate, the Government's supporting affidavit should be disclosed to the witness in the en-

forcement proceeding. . . . If after such disclosure the witness makes application to the district court for additional discovery in the enforcement proceeding the court must in deciding that request weigh the quite limited scope of an inquiry into abuse of the subpoena process, and the potential for delay, against any need for additional information which might cast doubt upon the accuracy of the Government's representations." *Id.* at 93.

I recognize that the Court of Appeals imposed these requirements not as a matter of constitutional law but "pursuant to the federal courts' supervisory power over grand juries and pursuant to our supervisory power over civil proceedings brought in the district court. . . ." *Id.* However, in the present case the Special Investigating Grand Jury was under the supervision of a Common Pleas judge, and I see no reason why an investigating grand jury should be supervised less strictly if it is a state grand jury rather than a federal one.

I also recognize that the facts in *Schofield* differ from those in the present case in that in *Schofield* the Government made no disclosure of relevancy, whereas here there was such disclosure *in camera*. This difference, however, is immaterial. As the preceding quotation from *Schofield* shows, an *in camera* disclosure will only be acceptable in "extraordinary circumstances." No such circumstances appear here.[3]

---

3. The Special Prosecutor has argued to us that his answer to appellant's motion to quash the subpoena amounted to such disclosure as *Schofield* requires. (Special Prosecutor's Brief at 8-9, footnote.) This point, however, does not appear to have been argued at the contempt hearing, and in the absence of a finding by the lower court, we cannot decide whether it is sound. It may be noted, however, that after *Schofield* was decided, the United States attorney made disclosure, which was ruled sufficient in *In Re Grand Jury Proceedings (Schofield)*, 507 F. 2d 963 (3d Cir. 1975); the disclosure appears rather fuller than that made in the answer to the motion to quash.

It is true that *in camera* disclosure was held sufficient in *In Re Falone,* 464 Pa. 42, 346 A.2d 9 (1975). There, the issue was whether a witness who had been granted immunity had properly been held in contempt for refusing to ·testify before the Special Investigating Grand Jury. The Act of November 22, 1968, P.L. 1080, No. 333, §1, 19 P.S. §640.1 (Supp. 1975), provides that "[t]he order to testify shall not be given except upon an order of court after a hearing in which the attorney general has established a need for the grant of immunity. . . ." The witness contended that "hearing" meant an adversary hearing in open court, but the Supreme Court held it was sufficient for the Commonwealth to satisfy the supervising judge *in camera* that immunization was necessary.

There is, however, an important difference between *Falone* and the present case. In *Falone,* as in any immunity case, the witness's right to plead the Fifth Amendment was eliminated; indeed, that elimination is the purpose of granting immunity, which "is an extraordinary benefit conferred on the witness." *In Re Falone, supra* at 56, 346 A.2d at 17. The reason for requiring a hearing before immunity is conferred is not to protect the witness but the public; the public is interested in having criminals prosecuted, and if a prosecution is to be made impossible by a grant of immunity, the grant should not be the decision of the attorney general alone but should be approved by the court. Since the witness in effect has no standing to object to the grant, he cannot object to the grant being approved *in camera.* In cases such as *Schofield* and the present case, however, the witness's right to plead the Fifth Amendment has not been eliminated. It follows that the witness does have standing to object to an *in camera* hearing. If the witness does not learn in what respect the materials requested are relevant to the grand jury investigation, it may be impossible for him to

know whether he should exercise his rights under the Fifth Amendment.

I do not understand the dissenting opinion to deny that this difference between *Falone* and the present case is decisive. The dissent would hold, however, that appellant's right to a disclosure of relevancy was waived by his counsel's statement to the court that counsel was "asking [the court] to receive [the Commonwealth's disclosures of relevancy] *in camera*", counsel going on to say, "I don't wish to see that, but I wish to know the fact that it exists on the record."

Granted that these statements amounted to a waiver of an *initial* disclosure of relevancy, it is not clear that counsel agreed there should *never* be such disclosure. As counsel pointed out in argument to the lower court, if the court had, after the *in camera* disclosure, granted counsel's motion to quash the subpoena, the issue of relevance would have become moot. "However, once having denied the motion to quash it was a compelling legal need of my client to have an opportunity to see and to argue with respect to the sufficiency of this [*in camera*] offer of proof." (N.T. 44a)

This argument is supported by *Schofield*. As the court there observed, if a witness is denied at least some preliminary disclosure of relevance, he may be unable to exercise a number of rights, among them the right against unreasonable search and seizure and the right not to incriminate himself. Thus the practical effect of the dissenting opinion would be that appellant's counsel, by requesting an *in camera* hearing, effectively waived his client's constitutional rights.

In my view, it would be erroneous to give counsel's request this effect. It is settled that we must be slow to find a waiver of any constitutional right. ". . . '[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights [footnote omitted] and . . . 'do not presume acquiescence in the loss of funda-

mental rights' [footnote omitted]. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464 (1937). *Accord, Commonwealth v. Singleton,* 439 Pa. 185, 266 A.2d 753 (1970); *Commonwealth v. Grant,* 229 Pa. Superior Ct. 419, 323 A.2d 354 (1974).

The order holding appellant in civil contempt should therefore be reversed.

WATKINS, P.J., and HOFFMAN and CERCONE, JJ., concur in the result.

————

DISSENTING OPINION BY VAN DER VOORT, J.:

The appellant, Augustine Salvitti, the Executive Director of the Philadelphia Redevelopment Authority, files the instant appeal from an Order adjudging him to be in civil contempt. The contempt citation arose following the appellant's May 7, 1975 refusal (in sessions before the Special Investigating Grand Jury which was examining Redevelopment Authority practices) to testify or produce records previously subpoenaed by the Special Prosecutor.

The record shows that on February 20, 1975, Grand Jury Subpoena Duces Tecum Number 868 was served upon appellant calling for the production of "any and all daily appointment books or calendars maintained on behalf of [Mr.] Salvitti for the year 1974." On April 15, 1975, Grand Jury Subpoena Duces Tecum Number 1073 was served upon the appellant requiring similar information for the time period during December, 1973, when the appellant held his position with the Redevelopment Authority. On April 25, 1975, the Redevelopment Authority filed a Motion to Quash the subpoenas. After the Commonwealth filed an Answer, the lower court held a hearing for oral argument on the Motion. The appellant, at this hearing, contended that the subpoena was overly broad.

During the course of the hearing on the Motion to Quash, appellant's counsel stated:

> "They have get (sic) to establish, to the *Court's satisfaction,*—I never said to my client's satisfaction, but to the Court's satisfaction that it comes within the scope of the investigation and that, in addition, they have some reason for requesting the information that they seek to subpoena. That's not been done, to my knowledge.
>
> "*I am not asking to hear what that is. I am asking this Court to receive from them in camera,* without my being present, a statement which I wish to be put on the record so that it will be recorded of exactly and precisely the reasons why they are requesting the appointment books and why they wish to review those things. *I don't wish to see that,* but I wish to know the fact that it exists on the record."

Following these statements by counsel, the Court held an *in camera* hearing, at which time the Special Prosecutor established, to the lower court's satisfaction, the relevancy of the subpoenaed documents within the scope of the Grand Jury's investigation.

On this appeal, the appellant raises several claims of error. He first contends that the lower court erred in finding civil contempt, "without first determining by a hearing the actual nature of the items being subpoenaed." At oral argument before our Court, appellant again raised the contention that there had been a lack of an appropriate hearing. It is clear that the record completely rebuts appellant's contention that he was not afforded hearings on his claims. Not only was there a hearing on the Motion to Quash Subpoenas, but the lower court also, at *appellant's* suggestion, held an *in camera* hearing concerning the broadness issue raised by appellant. I am at a loss to figure out what type of further hearing the appellant claims is his entitlement. I would reject his first contention of error.

Next, despite the fact that appellant expressly stated the position (at the suppression hearing[1]) that he did not feel he had a right to the information concerning relevancy and materiality, he now contends the lower court erred in not fulfilling his request that it provide him with a transcript of the *in camera* hearing. Thus, despite the fact that counsel said, "I don't wish to see that . . .", he later took the diametrically opposite position that he wanted to see it and was entitled to see it. I would not condone such improper tactics and would hold that appellant expressly waived any alleged right to information about or a transcript of the *in camera* hearing which he initially suggested to the court. Even if I did not find a waiver in these circumstances, it is clear that a judge supervising grand jury proceedings, in the exercise of his discretion, has the right to hold an *in camera* hearing of the type conducted in this case and maintain confidentiality if he believes the interests of the investigation so require. *In re Grand Jury Proceedings*, 507 F.2d 963 (3d Cir. 1975); see also *In re Grand Jury Subpoena to Central States*, 225 F. Supp. 923 (N.D. Ill. 1964).

Last, appellant claims that the lower court ". . . erred in finding appellant in civil contempt for his action on May 7, 1975, when the Court knew that a ruling on the *in camera* 'offer of proof'[2] would not be made until May 9, 1975." The appellant was found, at a May 9, 1975 hearing, to be in civil contempt for his refusal, when he appeared before the Grand Jury on May 7, 1975, to provide the information subpoenaed.

While appellant contends he might have avoided holding himself in contempt on May 7 if he had known of the lower court's decision on his May 6, 1975 request for a transcript of the *in camera* proceedings, the record effectively rebuts this claim. Appellant's counsel and the

1. See quotation, above.

2. The *in camera* proceedings.

Special Prosecutor's office, prior to appellant's May 7, 1975 appearance before the Grand Jury, agreed that his appearance would be for the sole purpose of refusing to produce the subpoenaed information. It was expressly stated by appellant that he realized he would have to enter such a refusal, and be subjected to a Decree of Civil Contempt, to enable him to raise an appellate challenge to the subpoena. See *United States v. Ryan,* 402 U.S. 530, 91 S. Ct. 1580, 29 L. Ed.2d 85 (1971) ; *In re: Petition of Specter,* 455 Pa. 518, 317 A.2d 286 (1974). Moreover, appellant did not make any prior request for a stay of his May 7, 1975 appearance before the Special Investigating Grand Jury, nor raise any other objection to his appearing on that date, despite his clear knowledge that a hearing on his May 6, 1975 request for the *in camera* record was not scheduled until May 9, 1975. In view of all of this evidence of the appellant's conduct and legal position before the lower court, I would dismiss his third claim of error.

I would affirm and remand to the lower court for compliance with sentence imposed.

JACOBS and PRICE, JJ., join in this dissenting opinion.