401 A.2d 834

BILL HEARD LEASING, INC., a corporation,

v.

Saul FINEBERG, Irwin Fineberg, Sidney Fineberg and Stanley Fineberg, Individuals and Partners d/b/a Federal Paper Company, a partnership.

Appeal of Sidney FINEBERG.

Superior Court of Pennsylvania.

Argued Oct. 25, 1978.

Decided April 12, 1979.

Harvey W. Daniels, Pittsburgh, for appellant.

Joseph J. Bernstein, Pittsburgh, for appellee.

Before VAN der VOORT, SPAETH and MONTGOMERY, JJ.

SPAETH, Judge:

This appeal arises from an order of the lower court attaching appellant for contempt of court.

On August 13, 1971, appellee, Bill Heard Leasing, Inc., filed a complaint in assumpsit in Allegheny County against appellant and Saul, Irwin, and Stanley Fineberg, partners of Federal Paper Company. On January 30, 1974, following a jury trial, appellee obtained a verdict in the sum of $6,873.30. On February 6, 1974, judgment on the verdict was entered, and notice of the entry was mailed to appellant's attorney. During the next eight months, appellee filed six notices to take appellant's deposition for the purpose of discovering appellant's assets. The record does not disclose whether depositions were taken on any of these occasions. On February 25, 1976, however, appellant was deposed. Discovery was frustrated by appellant's repeated invocation, upon the advice of his counsel, of his right under the fifth amendment to the United States Constitution against self-incrimination. Appellant refused to answer questions concerning the identities of his company's suppliers; his ownership or interest in any corporate or govern-

mental bonds, trust funds, annuities, rental property, safe deposit boxes, or personal property; his interests in any businesses; his checking or savings accounts; and whether he had made any transfers of assets valued in excess of $100 within the previous two years. The deposition terminated soon after it began, and appellant, his counsel, and appellee's counsel went immediately before the Court of Common Pleas of Allegheny County, where a motion by appellee's counsel that appellant be compelled to answer was heard by the Honorable John HESTER (now Judge on the Superior Court). Judge HESTER stated that "the Fifth Amendment is not appropriate to the questions as directed to the witness," and ordered appellant to answer the questions within twenty days upon pain of contempt. The court then recessed until 10:00 a. m. on March 17. Appellant neither answered the questions within the twenty days nor appeared at the hearing on the 17th. On September 13, 1976, appellee petitioned the lower court for sanctions. A rule to show cause why appellant should not be held in contempt of court was made returnable on October 13, 1976. On October 13, appellant was found to be in contempt, and the lower court directed the sheriff of Allegheny County to arrest appellant wherever he was to be found and to bring him before the court. On December 2, 1977, another hearing was held to determine whether appellant had purged himself of contempt. On December 5, 1977, appellant was committed by the lower court until he complied with the court's order of February 25, 1974, by answering the question.[1]

1. We note that the docket indicates that appellant filed his appeal twice—on December 2 and 7, 1977. We note further that Judge HESTER's order committing appellant, although dated December 5, was not entered until December 15. Finally, the record indicates that on December 2, 1977, this Court granted appellant bail pending his appeal. We did so upon appellant's written application for a stay, which averred, in part, that an order had been entered on December 2, committing appellant to the Allegheny County Jail if he did not answer appellee's questions by December 5. We do not consider these discrepancies in the record important, and treat the present appeal as one properly taken from Judge HESTER's order of December 5.

The only question appellant raises is whether he had the right under the fifth amendment to refuse to answer the questions asked him during the February 1974 deposition. Appellee has responded that appellant's refusal to answer the questions after being ordered to do so by the lower court was improper since appellant is protected from criminal prosecution in any matter revealed by his answers by the Act of May 9, 1913, P.L. 197, § 2, 12 P.S. § 2243 (1967), which provides:

> The judgment debtor may be compelled, in the same manner as other witnesses in judicial proceedings, to answer all pertinent questions addressed to him at such examination concerning his property; and he shall not be prosecuted, or subjected to any penalty or forfeiture, for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, before said court, except for perjury in giving such testimony.[2]

█ Appellant argues that this statute is unconstitutional under the holding in *McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924). The argument is frivolous. In *McCarthy*, the Supreme Court held that the privilege against self-incrimination extends to the examination of a bankrupt in a federal bankruptcy proceeding. The Court did not hold that the right against self-incrimination under the fifth amendment cannot be displaced by a grant of immunity from criminal prosecution. In fact, the Court specifically noted that "[i]f Congress should hereafter conclude that a full disclosure of the bankrupt estate by the witnesses is of greater importance than the possibility of punishing them for some crime in the past, it can, as in other cases, confer the power of unrestricted examination by providing complete immunity." *Id.* at 42, 45 S.Ct. at 17–18.

Immunity statutes have been repeatedly upheld by state and federal courts against constitutional attacks. In *In re*

2. This provision, insofar as it confers immunity from prosecution, has not been suspended by the Rules of Civil Procedure. *See* Procedural Rules Committee's Note to Pa.R.C.P. 3117 and Rule 3241(84).

*Falone,* 464 Pa. 42, 346 A.2d 9 (1975), Mr. Justice ROBERTS reviewed United States Supreme Court holdings that a witness's right against self incrimination under the fifth amendment may be supplanted by prosecutorial immunity:

When a witness receives a grant of immunity from prosecution that is at least as broad in scope and effect as the privilege against self-incrimination, his privilege is completely displaced because he has "complete protection from all the perils against which the [privilege] was designed to guard." *Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); *Kastigar v. United States,* 406 U.S. 411, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *Gardner v. Broderick,* 392 U.S. 273, 276, 88 S.Ct. 1913, 1915, 20 L.Ed.2d 1082 (1968) (dictum); *Murphy v. Waterfront Commission of New York Harbor,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); *Ullmann v. United States,* 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956); *Hale v. Henkel,* 201 U.S. 43, 65–70, 26 S.Ct. 370, 375–77, 50 L.Ed. 652 (1906); *Brown v. Walker,* 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896); *Counselman v. Hitchcock,* 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892); *Riccobene Appeal,* 439 Pa. 404, 410, 268 A.2d 104, 108 (1970) (opinion announcing the judgment). A grant of immunity is sufficient to supplant the privilege if the witness is protected against use of the compelled testimony and all its fruits. *Kastigar v. United States,* supra. . . .

As the Supreme Court stated in *Kastigar v. United States,* supra:

"[The] sole concern [of the privilege against self-incrimination] is to afford protection against being 'forced to give testimony leading to the infliction of "penalties affixed to . . . criminal acts." ' Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness."

406 U.S. at 453, 92 S.Ct. at 1661 (footnote omitted). 464 Pa. at 47–48, 346 A.2d at 12–13 (footnotes omitted). The immunity statute involved in *Falone* provided transactional immunity[3] for witnesses compelled to testify in proceedings relating to organized crime and racketeering; the statute reads:

> No such witness shall be prosecuted or subjected to any penalty or forfeiture nor shall there be any liability on the part of and no cause of action of any nature shall arise against any such witness for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceedings against him in any court. 19 P.S. § 640.3 (Supp.1978–79).

In *Riccobene Appeal*, 439 Pa. 404, 268 A.2d 104 (1970), the Court held that the statute did not violate the fifth amendment of the United States Constitution, nor the Pennsylvania Constitution. *See also Commonwealth v. Brady*, 470 Pa. 420, 368 A.2d 699 (1977) (Court unanimous that witness's federal right against self-incrimination not violated when transactional immunity granted for testimony); *In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975) (plurality opinion).

■ The statute involved here also provides transactional immunity. Therefore, there is no doubt that the statute is constitutional and that once immunity attached, appellant could be compelled to testify without violating his fifth amendment rights. Appellant does not argue, nor does the record indicate, that the lower court in compelling him to answer failed to follow the same procedure used in compelling answers from other witnesses in civil proceedings. *See*

**3.** Transactional immunity should be contrasted with use immunity. Transactional immunity precludes prosecution for any transaction concerning which testimony was compelled, regardless of whether the compelled testimony or its fruits are used by the Commonwealth in the prosecution. "This is broader than the so-called 'use' immunity statute, which forbids further use of compelled testimony or its fruits, but would still permit prosecution for the same transaction if the evidence was obtained independently of the compelled testimony." *Riccobene Appeal*, 439 Pa. 404, 412, 268 A.2d 104, 109 (1970).

12 P.S. § 2243; Pa.R.C.P. 4019. Thus, when appellant was ordered to answer appellee's questions, immunity attached, *see Marine Midland Trust Co. of Southern New York v. Douvanis,* 50 Pa.D. & C.2d 403 (1970) (WIEAND, J.),[4] and the lower court properly held him in contempt when he continued his refusal to answer.

Affirmed.

4. *Compare with In re Kelly,* 200 Pa. 430, 50 A. 248 (1901), where the Supreme Court held that a witness in a contested election case cannot refuse to answer questions on the ground of self-incrimination after being ordered to do so by the court since article VII, section 8, of the Pennsylvania Constitution confers immunity upon the witness upon his being compelled to answer.