120 N.J. Super. 460 (1972)
295 A.2d 3
IN THE MATTER OF, PETER BRIDGE, CHARGED WITH CONTEMPT OF COURT.
Superior Court of New Jersey, Appellate Division.
Argued August 21, 1972.
Decided September 12, 1972.
*463 Before Judges COLLESTER, CARTON and ALLCORN.
Mr. Edward J. Gilhooly argued the cause for appellant (Messrs. Yauch, Peterpaul & Clark, attorneys).
Mr. Richard L. Slavitt, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
Mr. Arthur Uscher argued the cause for American Civil Liberties Union of New Jersey as amicus curiae, by leave of court (Messrs. Friedman, Kates & Uscher, attorneys).
The opinion of the court was delivered by COLLESTER, P.J.A.D.
This is an appeal by Peter Bridge from an order of the Superior Court, Law Division, holding him in contempt for refusing to answer five questions before the Essex County grand jury and confining him to the county jail until he purged himself by answering the questions posed. The trial judge stayed the order pending an appeal and we granted the prosecutor's motion to accelerate the appeal for early argument.
On May 2, 1972 the Newark Evening News published an article under Peter Bridge's by-line concerning an alleged offer of a bribe to Pearl Beatty, a member of the Newark Housing Authority. The article contained the following statements:
Mrs. Pearl Beatty, a commissioner of the Newark Housing Authority, said yesterday an unknown man offered to pay her $10,000 to influence her vote for the appointment of an executive director of the authority.
*464 Mrs. Beatty said also that at least two other commissioners had been harassed and threatened in efforts to control their votes.

* * * * * * * *
Mrs. Beatty said, "a man walked into my office and offered me $10,000 if I would vote for `their' choice for executive director."
The Essex County grand jury commenced an investigation of the alleged bribe attempt and on May 19, 1972 subpoenaed Bridge to appear before it. Bridge moved to quash the subpoena. Assignment Judge Giuliano denied the motion and ordered Bridge to appear before the grand jury. He rejected Bridge's contention that compelling him to testify would violate the guarantee of freedom of the press contained in the First Amendment. Judge Giuliano held that Bridge had waived the privilege afforded him by N.J.S.A. 2A:84A-21 (Evidence Rule 27) under the provisions of N.J.S.A. 2A:84A-29 (Evidence Rule 37).
Bridge moved for leave to appeal from the order. This court granted leave and, following oral argument, affirmed the order denying the motion to quash and directing Bridge to appear before the grand jury. No appeal or petition for certification of the appeal was thereafter filed with the Supreme Court.
On June 8, 1972, following this court's decision, Bridge appeared before the grand jury. When he refused to answer certain questions he was brought before Judge Giuliano who, following a hearing, directed Bridge to answer. On June 14 Bridge again returned before the grand jury and refused to answer certain questions. Judge Giuliano ordered him to answer the questions, including the five questions which were the basis for the subsequent contempt action.[1] When Bridge *465 subsequently refused to answer the five questions before the grand jury, Judge Giuliano ordered Bridge to show cause why he should not be adjudged in contempt. The order was made returnable before Judge Meanor. Following a hearing, Judge Meanor held that Bridge had neither a constitutional privilege nor a statutory privilege to refuse to answer the questions. The judge entered an order adjudging Bridge to be in contempt of court and directed that he be confined to the county jail until he answered the five questions or until the grand jury was discharged. This appeal followed.
We first note that the two principal issues in this appeal, namely, (1) whether appellant waived his newspaperman's privilege accorded by Evidence Rule 27 (N.J.S.A. 2A:84A-21), and (2) whether the First Amendment grants him the privilege of refusing to testify before a grand jury, were raised on his prior appeal from the denial of the motion to quash the subpoena. In that appeal we held that appellant waived his privilege under Evidence Rule 27 by disclosing in the news article the source of his information and that compelling his appearance before the grand jury did not amount to an abridgment of his rights under the First Amendment. The issues having been decided on the merits in that appeal, the decision became the law of the case. State v. Cusick, 116 N.J. Super. 482, 485 (App. Div. 1971). However, rather than dismiss the appeal on that ground, not raised by either party, we prefer to decide the case on its merits.
*466 The privilege of nondisclosure granted to a newspaperman in this State is set forth in Evidence Rule 27 (N.J.S.A. 2A:84A-21). It reads as follows:
Subject to Rule 37, a person engaged on, connected with, or employed by, a newspaper has a privilege to refuse to disclose the source, author, means, agency or person from or through whom any information published in such newspaper was procured, obtained, supplied, furnished, or delivered.
Evidence Rule 37 (N.J.S.A. 2A:84A-29) provides that "a person waives his right or privilege to refuse to disclose * * * a specified matter if he * * * without coercion and with knowledge of his right or privilege, made disclosure of any part of the privileged matter * * *."
Appellant first argues that the term "source" in Evidence Rule 27 protects both the identity of the informant as well as that part of the informant's statement which was not published and that his disclosure of the identity of the informant does not constitute a waiver of his right of nondisclosure of the unpublished information. We conclude that the argument lacks substance. Evidence Rule 37 clearly states that a person waives his privilege of nondisclosure if he "made disclosure of any part of the privileged matter." Cf. In re Murtha, 115 N.J. Super. 380, 387-388 (App. Div. 1971), certif. den. 59 N.J. 239 (1971). Here appellant disclosed in the newspaper article that Mrs. Beatty was the source of his information and also disclosed at least part of the information given him by Mrs. Beatty. We are satisfied and hold that appellant waived his newspaperman's privilege and can be compelled to testify before the grand jury like any other person.
We find no merit in appellant's contention that Evidence Rule 37 (N.J.S.A. 2A:84A-29) is unconstitutionally vague.
We turn next to the question of whether appellant was privileged under the First Amendment to refuse to answer the five questions posed to him before the grand *467 jury. In ruling that Bridge was not so privileged Judge Meanor relied on Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). We are in full accord with Judge Meanor's ruling. In Branzburg the court laid down a broad rule that the First Amendment accords a newspaperman no privilege against appearing before a grand jury and answering questions as to either the identity of his news sources or information which he has received in confidence. The court specifically stated, "We are asked to create another [privilege] by interpreting the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy. This we decline to do." (at 688, 92 S.Ct. at 2660, 33 L.Ed.2d at 644).
Appellant contends that if a reporter is required to testify before a grand jury concerning unpublished information received from a public official, such as Mrs. Beatty, then "government" will have an effective tool to prevent its wrong-doings from being brought to the attention of the public; that not only must the identity of a public employee be protected but all unpublished information received from the public employee as well. He bases his argument on the dissenting opinions filed in Branzburg. We cannot agree with appellant's argument. A reading of the majority opinion in Branzburg indicates that the court there considered a similar argument and refused to accept it. See 408 U.S. at 692-698, 92 S.Ct. at 2662-2664, 33 L.Ed.2d at 646-648. The court stated:
Accepting the fact, however, that an undetermined number of informants not themselves implicated in crime will nevertheless, for whatever reason, refuse to talk to newsmen if they fear identification by a reporter in an official investigation, we cannot accept the argument that the public interest in possible future news about crime from undisclosed, unverified sources must take precedence over the public interest in pursuing and prosecuting those crimes reported to the press by informants and in thus deterring the commission of such crimes in the future. (at 695, 92 S.Ct. at 2663, 33 L.Ed.2d at 647-648).
*468 Appellant also contends that a majority of the justices in Branzburg held that society's interest in being informed, which requires a free flow of information, must be weighed against the State's interest in obtaining information relevant to the investigation of a particular crime. He alleges that the five questions which he refused to answer are so lacking in relevance and need that no matter upon whom the burden of proof is placed in balancing of the issues, it is clear that his rights as a reporter outweigh any right of the State. We do not read the majority opinion in Branzburg as requiring a balancing of the interests test to determine when a reporter should be compelled to testify. Quite to the contrary, Justice White in the majority opinion rejects such a contention, 408 U.S. at 698-709, 92 S.Ct. 2665-2670, 33 L.Ed.2d at 650-655.
Moreover, we agree with Judge Meanor that the five questions which Bridge refused to answer were relevant to the inquiry being conducted by the grand jury to determine whether an offer to bribe a housing commissioner, in violation of N.J.S.A. 2A:93-6, had been made.
It is also argued that since the court in Branzburg stated that is was powerless to erect any bar to state courts construing their own constitutions so as to recognize a newspaperman's privilege, either qualified or absolute, we should construe N.J. Const., Art. I, par. 6 to include an absolute or qualified privilege for newspapermen for the reasons expressed in the dissenting opinions filed in Branzburg. No decisions of our courts are cited in support of this proposition. The only privilege from nondisclosure by a newspaperman in this State is set forth in Evidence Rule 27, enacted by the Legislature in 1960 (N.J.S.A. 2A:84A-21). We are satisfied that the granting of such privileges is a matter for the Legislature and not for the courts.
Finally, appellant argues that Judge Meanor lacked jurisdiction to enter the order under review because the sole issue on the return of the order to show cause was whether appellant was guilty of criminal contempt. He *469 contends that a proceeding to compel him to answer the questions or be committed until he did so, brought pursuant to R. 1:10-5, could only be heard and determined by Judge Giuliano who issued the order to show cause.
We find no merit in appellant's contentions. The record indicates that the State did not seek to punish appellant for criminal contempt in a proceeding under R. 1:10-2 but to compel compliance with the order to answer the questions propounded before the grand jury. Such a proceeding has been held to constitute civil contempt, Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966), and is provided for under R. 1:10-5. See also In re Contempt of Carton, 48 N.J. 9 (1966), where the court stated, "Confinement terminable upon defendant's compliance is usually the hallmark of a civil proceeding." (at 23).
We do not read R. 1:10-5 to provide that the judge who issued the order to show cause alone has power to hear and determine the issues raised in such a proceeding. As assignment judge, Judge Giuliano could properly assign the matter to another judge.
We have carefully considered the points raised in the brief filed by the amicus curiae, all of which support appellant's contentions. We find none of the points to be persuasive.
The order under review is affirmed.
NOTES
[1] The questions propounded to the witness were:

1. Mr. Bridge, would you please tell us whether Mrs. Beatty provided a description of the unknown man?
2. Did Mrs. Beatty provide you with specific acts of harassment and threats other than those outlined in the newspaper article?
3. Within the framework of this: "A man walked into my office and offered me $10,000 if I would vote for `their' choice for executive director," did Mrs. Beatty indicate who their choice for executive director was?
4. Mr. Bridge, in addition to that which is contained in the article, what else did Mrs. Beatty say? Did she say it was a tall man, a white man, a black man, a heavy man, a shortman?
5. Mr. Bridge, did Mrs. Beatty indicate when, in fact, the bribe offer took place?