346 A.2d 22

In re Raymond MARTORANO.

Appeal of the COMMONWEALTH of Pennsylvania.

Supreme Court of Pennsylvania.

Argued May 8, 1975.

Decided Oct. 3, 1975.

68

Mark A. Klugheit, Asst. Atty. Gen., Walter M. Phillips, Jr., Deputy Atty. Gen., Philadelphia, for Commonwealth, appellant.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellee Raymond Martorano was held in contempt of court for refusing to testify before an investigating grand jury after being granted immunity and ordered to testify pursuant to the Act of November 22, 1968, P.L. 1080, 19 P.S. § 640.1–.6 (Supp.1974). In this appeal we must decide the propriety of that adjudication.

On July 2, 1974, Martorano was served with a subpoena ordering him to testify on July 10 before the January, 1974, Special Investigating Grand Jury of Philadelphia, which was investigating official corruption in Philadelphia. See generally *In re Investigation of the January, 1974, Philadelphia Grand Jury*, 458 Pa. 586, 328 A.2d 485 (1974). On July 10 Martorano filed a petition to strike or set aside the subpoena. The court supervising the grand jury heard testimony and argument on July 12

on Martorano's claim that service of the subpoena was defective and that the absence from the face of the subpoena of the official seal of the court of common pleas rendered it void. On August 8, the court filed an order denying the petition.

Martorano appeared, as directed, on August 16. After being sworn and instructed as to his rights,[1] he was taken before the grand jury and questioned concerning certain acquaintances and business activities. However, Martorano invoked his privilege against self-incrimination[2] and refused to answer all questions. He was excused and directed to appear on September 4.

Upon his reappearance on September 4, he again invoked the privilege against self-incrimination and refused to answer any questions. The Commonwealth immediately petitioned the supervising court to grant immunity to Martorano and to order him to testify, pursuant to the Act. The petition was signed by then-Attorney General Israel Packel and verified by the affidavit of an assistant attorney general. It alleged that Martorano was "reasonably believed" to possess "knowledge or evidence . . . concerning a system of payment of bribes to Philadelphia Police officers to forego prosecution of those involved in illegal gambling activities." The petition asserted that the grand jury needed Martorano's testimony "in order to uncover the identity of others involved with him in illegal gambling activities and bribe payments to police officers" and was unable to acquire that testimony because of Martorano's invocation of the privilege against self-incrimination.

After the court ascertained that Martorano had properly invoked the privilege, it afforded Martorano's coun-

1. See *Commonwealth v. McCloskey*, 443 Pa. 117, 143, 277 A.2d 764, 777, cert. denied, 404 U.S. 1000, 92 S.Ct. 563, 30 L.Ed.2d 552 (1971).

2. See U.S.Const. amend. V; Pa.Const., art. I, § 9. The states are prohibited to infringe the privilege by U.S.Const. amend. XIV. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

sel an opportunity to respond to the petition. However, he protested that he needed time to prepare, and the hearing was continued until September 5.

On September 5, the hearing resumed and Martorano's counsel presented a lengthy oral argument opposing immunization of his client. Also on September 5, the court held an *in camera* hearing for the Commonwealth to present evidence in support of the petitioner's assertion that immunization was needed. After the hearings, the court granted the Commonwealth's petition, ordered Martorano to testify, and conferred the immunity from prosecution permitted by the Act.

Martorano returned to the grand jury on the same day but he again invoked his privilege against self-incrimination and refused to testify. The Commonwealth immediately petitioned the court orally to hold Martorano in contempt. The court, however, decided not to proceed without a written petition. It directed the Commonwealth to file a petition and rescheduled the matter for the afternoon of September 6. Martorano's counsel unsuccessfully sought a longer delay so that he could attend a funeral that day.

When the hearing resumed, the court gave Martorano a further opportunity to answer the grand jury's questions, but he refused. The court found Martorano to be in civil contempt and ordered him incarcerated in the county jail for a period of six months or until he purged himself by testifying or until the term of the grand jury expired.

Martorano appealed to the Superior Court, which reversed the contempt order.[3]
The Commonwealth petitioned this Court for allowance of an appeal,[4] which we granted. Due to the need for an

3. 231 Pa.Super. 395, 332 A.2d 534 (1975). Judges Jacobs and Spaeth concurred in the result.

4. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1974).

expeditious decision in this appeal, we filed an order on July 7, 1975, reversing the order of the Superior Court and reinstating the order of the court of common pleas. We noted these opinions would follow.

We note that this is Martorano's second adjudication of contempt. He had been called to testify before a predecessor grand jury and had refused to answer its questions. After he had been immunized and ordered to testify, Martorano persisted in his refusal and was adjudged to be in contempt. He received a sentence identical to that imposed in this case. See *Martorano Appeal*, 225 Pa.Super. 474, 310 A.2d 683 (1973). While the record does not indicate the disposition of that sentence, Martorano represents in his brief that he remained in jail for six months and was released.

In this case the Superior Court reversed on the authority of *In re Falone*, 231 Pa.Super. 388, 332 A.2d 558, rev'd, 462 Pa. 181, 339 A.2d 759 (1975), holding that the petition was defective under the Act because it was verified by an assistant attorney general rather than the Attorney General himself. 231 Pa.Super. at 398, 332 A.2d at 536. We have held that an immunization petition is sufficient if it is signed by the Attorney General and verified by one of his subordinates who has personal knowledge of the facts alleged in the petition. *In re Falone*, 464 Pa. 42, 346 A.2d 9 (1975).

■ We conclude that the petition requesting that Martorano be immunized satisfies the standards laid down in *Falone*. This conclusion removes the ground upon which the Superior Court's order rests. However, Martorano offers several other arguments not passed upon by the Superior Court which, if meritorious, would be sufficient to require affirmance.[5] We conclude that they are not meritorious.

5. We will affirm the judgment, order, or decree of the court below if the result is correct for any reason without regard to the ground relied upon by that court. *Gilbert v. Korvette, Inc.*, 457 Pa. 602, 604 n. 5, 327 A.2d 94, 96 n. 5 (1974); *Prynn Estate*, 455 Pa. 192, 197 n. 9, 315 A.2d 265, 267 n. 9 (1974).

First, he argues that the court was without authority to grant immunity under the Act because the proceeding in which his testimony was sought was not "a proceeding relating to organized crime or racketeering before a . . . grand jury" under the Act.[6] We rejected an identical argument in *In re Falone*, supra at 42, 346 A. 2d at 9. See also *In re LaRussa*, 464 Pa. 86, 346 A.2d 32 (1975).

▇ Second, he argues that the grant of immunity and order to testify were ineffective because the *in camera* hearing held by the court in this case failed to satisfy the requirement of section 1 of the Act that "[t]he order to testify shall not be given except upon an order of court after a hearing in which the attorney general has established a need for the grant of immunity . . . ."[7] In *Falone* we held:

"The 'hearing' requirement is designed solely to serve as the means of conveying to the court information to enable it to perform its independent approval function. It was not designed to provide an adversary proceeding in which a witness could contend, in opposition to the Commonwealth's presentation, that there is no need for immunization. [citations omitted] Accordingly, if the Commonwealth establishes to the satisfaction of the court, in a manner satisfactory to the court, that immunization is necessary, the purpose of the 'hearing' requirement is effectuated, and no more is required."

6. "If, in a proceeding relating to organized crime or racketeering before a court, grand jury or investigating body set up by legislative enactment or by order of the Governor, any person shall refuse to testify or to produce evidence of any other kind on the ground that his testimony or evidence may tend to incriminate him, that person may be ordered to give such testimony. The order to testify shall not be given except upon an order of court after a hearing in which the attorney general has established a need for the grant of immunity, as hereinafter provided."
19 P.S. § 640.1.

7. See note 6 supra.

464 Pa. at 42, 346 A.2d at 9. The hearing in this case satisfied the court that immunization was needed, and that is all that the Act requires. Martorano's argument must accordingly fail.

Martorano next argues that he was deprived of his liberty without due process in that he was not afforded an adequate time in which to prepare to attack the Commonwealth's petition for immunization and to resist the grant of immunity. The petition was filed with the court and served on Martorano on September 4. The court held a hearing on September 5 during which it afforded Martorano's counsel an opportunity to argue in opposition to immunization. He argues that one day was insufficient to permit his counsel to prepare to resist the petition. We disagree.

■ Due process is a flexible concept. What process is due depends upon the circumstances of each case, including the nature of the interests that are at stake and the particular proceeding in question. See *Groppi v. Leslie*, 404 U.S. 496, 500, 92 S.Ct. 582, 585, 30 L.Ed.2d 632 (1972); *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 894–95, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961); *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); *Commonwealth v. Mayberry*, 459 Pa. 91, 102, 327 A.2d 86, 92 (1974). In this case, the extent of Martorano's due-process right to an adequate time to prepare is dependent upon the magnitude of his interests in resisting a grant of immunity and the nature of the immunization proceedings.

■ It is clear that any interest a witness may have in opposing immunization does not rise to a constitutional level, because a grant of immunity under the Act is a constitutionally sufficient replacement for his privilege against self-incrimination. *In re Falone*, supra, 464 Pa. at 42, 346 A.2d at 9; *Riccobene Appeal*, 439 Pa. 404, 410–16, 268 A.2d 104, 108–11 (1970) (plurality opinion).

No other constitutionally-based interests are arguably at stake in a witness's immunization.

Furthermore, the Act grants to a witness only a limited right to oppose the Commonwealth's petition. We have held that the witness has no statutory right under the Act to participate in the Commonwealth's showing of the need for immunization. *In re Falone,* supra, 464 Pa. at 42, 346 A.2d at 9; see also *Riccobene Appeal,* supra, 439 Pa. at 418, 268 A.2d at 112; *Martorano Appeal,* 225 Pa.Super. 474, 483–84, 310 A.2d 683, 688 (1973). At most, the Act affords to the witness the limited procedural right to raise in opposition to immunization any facial insufficiency in the Commonwealth's petition. Other issues are not cognizable grounds for resistance of immunization, although they might constitute defenses in a contempt proceeding.

■ In light of the fact that the witness has at most a minor interest in resisting immunization, no constitutional right to resist a grant of immunity, and a very limited statutory right to participate in the immunization proceedings, we conclude that Martorano's counsel was afforded a constitutionally sufficient time in which to prepare. His counsel admitted in the proceedings below that he was informed no later than July 8, 1974, that the Commonwealth intended to seek immunity if Martorano proved to be uncooperative. Although only one day separated the filing of the Commonwealth's petition and the court's grant of immunity, Martorano's counsel was able to present to the court a lengthy oral argument opposing immunization of his client. We conclude that Martorano was afforded a sufficient time to prepare to resist immunization.

■ Martorano next argues that the contempt proceedings infringed his right to due process of law because he and his attorney were not given a reasonable

time in which to prepare to conduct a defense.[8] However, Martorano did not raise the issue of inadequate time for preparation at any time in the contempt hearings on September 5 and 6, nor did he at any time request a continuance in order to allow him time for preparation of a defense. In these circumstances, this argument was not available to Martorano in the Superior Court, and therefore we may not affirm that court's reversal of the contempt order on that ground. See *Licata v. United States*, 429 F.2d 1177, 1180 (9th Cir.), vacated as moot, 400 U.S. 938, 91 S.Ct. 239, 27 L.Ed.2d 243 (1970); see generally *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

■ Martorano next contends that the supervising court erred in entering a civil adjudication of contempt rather than a criminal adjudication. He argues, first, that section 5 of the Act,[9] which provides that a person who disobeys an order to testify shall be guilty of criminal contempt, impliedly forbids a court to enter a civil order of contempt; and, second, that a contemptuous refusal to testify before a grand jury is inherently a criminal contempt rather than a civil contempt.

The argument that section 5 of the Act divests courts of power to compel recalcitrant witnesses to testify is

8. See *United States v. Alter*, 482 F.2d 1016, 1020–24 (9th Cir. 1973); cf. *United States v. Boe*, 491 F.2d 970, 971 (8th Cir. 1974); see also *Taylor v. Hayes*, 418 U.S. 488, 496, 500, 94 S.Ct. 2697, 2702–04, 41 L.Ed.2d 897 (1974) (criminal contempt); *Groppi v. Leslie*, 404 U.S. 496, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972) (same); *Commonwealth v. Mayberry*, 459 Pa. 91, 106, 327 A.2d 86, 93–94 (1974) (same); ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 7.4 (Approved Draft, 1972) (same).

9. "Any person who shall refuse or decline to testify or produce evidence of any other kind after being granted immunity and ordered by the court, shall be guilty of criminal contempt, and upon conviction thereof, shall be sentenced to pay a fine of not exceeding one thousand dollars ($1,000), or to undergo imprisonment for a period not exceeding one year, or both." 19 P.S. § 640.5.

flatly in error. "There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." [10] Section 5, in providing that a disobedient witness shall be guilty of criminal contempt, does not imply that a criminal adjudication of contempt is the only available remedy in the face of a contumacious refusal to testify. It cannot be read as an attempt by the Legislature to divest or limit the inherent power of courts. It was held in *Riccobene Appeal*, supra, 439 Pa. at 421–25, 268 A.2d at 113–15, and *Martorano Appeal*, supra, 225 Pa.Super. at 477–80, 310 A.2d at 685–86, that civil adjudications of contempt are available to a court under the Act; we reaffirm that holding today.

The second branch of Martorano's argument, that his contempt was intrinsically criminal and could therefore not be dealt with civilly, requires a review of the law of contempt. There is nothing inherent in a contemptuous act or refusal to act which classifies that act as "criminal" or "civil." The distinction between criminal and civil contempt is rather a distinction between two permissible judicial responses to contumacious behavior. For example, it is clear that a contemptuous refusal to testify before a grand jury may be dealt with either a criminal contempt,[11] civil contempt,[12] or both.[13]

---

10. *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966); *Riccobene Appeal*, 439 Pa. 404, 422–23, 268 A.2d 104, 114 (1970) (plurality opinion); see *Brocker v. Brocker*, 429 Pa. 513, 519, 241 A.2d 336, 338 (1968); *Commonwealth ex rel. Beghian v. Beghian*, 408 Pa. 408, 413–14, 184 A.2d 270, 273 (1962); *Commonwealth ex rel. Roviello v. Roviello*, 229 Pa.Super. 428, 438, 323 A.2d 766, 772 (1974); cf. ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 7.1 (Approved Draft, 1972).

11. E. g., *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965); *Piemonte v. United States*, 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961); *United States ex rel. Ushkowitz v. McCloskey*, 359 F.2d 788 (2d Cir. 1966); *Second Additional Grand Jury v. Cirillo*, 12 N.Y.2d 206, 237 N.Y.S.2d 709, 188 N.E.2d

12 & 13. See note 12 & 13 on page 78.

These judicial responses are classified according to the dominant purpose of the court.[14] If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication of contempt is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal.[15]

Dominant purpose of coercion or punishment is expressed in the sanction imposed. A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by

138 (1963); cf. *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975) (refusal to testify at trial); *Commonwealth v. Abrams*, 461 Pa. 327, 336 A.2d 308 (1975) (same); *State v. Vickers*, Maine, 309 A.2d 324 (1973) (same).

12. E. g., *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *Shillitani v. United States*, supra note 10; *United States v. Handler*, 476 F.2d 709 (2d Cir. 1973); *In re Falone*, supra note 5; *Riccobene Appeal*, supra note 10; *Martorano Appeal*, 225 Pa.Super. 474, 310 A.2d 683 (1973); *In re Bridge*, 120 N.J.Super. 460, 295 A.2d 3, cert. denied, 62 N.J. 80, 299 A.2d 78 (1972), cert. denied, 410 U.S. 991, 93 S.Ct. 1500, 36 L.Ed.2d 189 (1973); cf. *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972) (refusal to testify before investigative commission).

13. Cf. *Yates v. United States*, 355 U.S. 66, 74–75, 78 S.Ct. 128, 133–34, 2 L.Ed.2d 95 (1957) (refusal to testify at trial).

14. *Woods v. Dunlop*, 461 Pa. 35, 40 n. 2, 334 A.2d 619, 622 n. 2 (1975); *Riccobene Appeal*, supra note 10, 439 Pa. at 424, 268 A.2d at 115; *Brocker v. Brocker*, supra note 10, 429 Pa. at 519, 241 A. 2d at 338; *Commonwealth ex rel. Beghian v. Beghian*, supra note 10, 408 Pa. at 411, 184 A.2d at 271; *Knaus v. Knaus*, 387 Pa. 370, 376, 127 A.2d 669, 672 (1956).

15. *Shillitani v. United States*, supra note 10, 384 U.S. at 369–70, 86 S.Ct. at 1535; *Woods v. Dunlop*, supra note 14, 461 Pa. at 40 n. 2, 334 A.2d at 622 n. 2; *Riccobene Appeal*, supra note 10, 439 Pa. at 422, 268 A.2d at 114; *Brocker v. Brocker*, supra note 10, 429 Pa. at 519–23, 241 A.2d at 338–41; *Commonwealth ex rel. Beghian v. Beghian*, supra note 10, 408 Pa. at 413, 184 A.2d at 272; *Knaus v. Knaus*, supra note 14, 387 Pa. at 377, 127 A.2d at 672; D. Dobbs, Handbook on the Law of Remedies § 2.9, at 97 (1973); Dobbs, Contempt of Court: A Survey, 56 Cornell L.Rev. 183, 235–39 (1971).

obeying the court's order,[16] while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance. See *Shillitani v. United States*, 384 U.S. 364, 368–70, 86 S.Ct. 1531, 1534–35, 16 L.Ed.2d 622 (1966); *Riccobene Appeal*, supra, 439 Pa. at 421–23, 268 A.2d at 113–14; *Knaus v. Knaus*, 387 Pa. 370, 379, 127 A.2d 669, 673 (1956); D. Dobbs, Handbook on the Law of Remedies § 2.9, at 97 (1973);[17] Dobbs, Contempt of Court: A Survey, 56 Cornell L.Rev. 183, 235–39 (1971).

**16.** "[T]he coercive feature of the civil contempt sentence is reflected in its indeterminate nature. The contumacious party need not stay in jail for any definite term; he may get out at will. He need only purge himself of his contempt by complying or showing a willingness to comply with the court's order. This is classically expressed in the aphorism that the person imprisoned for civil contempt carries the keys to the jail in his own pocket."
Dobbs, supra note 15, 56 Cornell L.Rev. at 237 (footnote omitted).

**17.** "The distinction between civil and criminal contempt refers to a difference in mode of trial and mode of sentencing. Sometimes courts overlook this point and speak as if the nature of the defendant's *act* is in question and that some acts constitute 'criminal,' while others only constitute 'civil' contempt. The mistake is a natural one, but is nevertheless a mistake, as indicated by the fact that the same act or omission may subject the same defendant to either criminal or civil contempt, or both.

"Thus the terms 'criminal contempt' and 'civil contempt' refer to the nature of the proceedings and the nature of the sentence meted out. A case tried under all the rules for criminal proceedings, in which the defendant is given all of the criminal due process, and sentenced to a certain term in jail, is clearly a criminal contempt case, even though the act of contempt is the violation of an injunction in a civil case. Likewise, if the case is tried under ordinary civil procedure, and the court orders the defendant to jail until he complies with the decree, the contempt proceeding is clearly a civil one.

. . . . . . . . .

"Actually all this classification as criminal or civil is unnecessary. The purpose of the classification is simply to say that criminal type sentences should not be meted out where criminal type protections are not afforded, and that coercive sentences should not be meted out where there is nothing to coerce. Nothing more need be said, to express the policies involved. Thus if a witness refuses to testify before the grand jury, he may be subjected to a contempt proceeding. If the

■■■■ The civil-criminal classification of contempt exists solely for determination of a contemnor's procedural rights and a court's sentencing options. Quite simply, a contemnor who will be sentenced to a determinate term of imprisonment or a fixed fine, which he is powerless to| escape by purging himself of his contempt, is entitled to the essential procedural safeguards that attend criminal proceedings generally.[18] Second, a court is not permitted to impose a coercive sentence conditioned on the contemnor's performance of some act that is incapable of performance.[19]

■■■■ In this case, it is clear that the court dealt with Martorano's contumacy in a civil adjudication of contempt. The sentence imposed was imprisonment in the county jail for six months or until he purged himself by testifying or until the expiration of the term of the grand jury. That Martorano could escape imprisonment by complying with the order to testify demonstrates that the court's purpose was to coerce him to testify and thus was a civil adjudication.

> grand jury has been dissolved, however, there can be no coercive purpose in the contempt sentence, and the sentence must therefore be a determinate one; that being so, the procedure must be compatible by furnishing the criminal type protections." (footnotes omitted)

18. See *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Bloom v. Illinois*, 391 U.S. 194, 88 S. Ct. 1477, 20 L.Ed.2d 522 (1968); *Commonwealth v. Abrams*, 461 Pa. 327, 336 A.2d 308 (1975); *Commonwealth v. Mayberry*, 459 Pa. 91, 327 A.2d 86 (1974); Act of June 23, 1931, P.L. 925, § 1, 17 P.S. § 2047 (1962); but cf. *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975).

19. *Shillitani v. United States*, supra note 10, 384 U.S. at 371–72, 86 S.Ct. at 1536; *Knaus v. Knaus*, supra note 14, 387 Pa. at 380, 127 A.2d at 673–74; D. Dobbs, Handbook on the Law of Remedies § 2.9, at 97 (1973) (see note 17 supra); cf. *Catena v. Seidl*, 65 N.J. 257, 262, 321 A.2d 225, 228 (1974) (dictum).

To this extent, the civil-criminal distinction does depend on the nature of the contemptuous act. For example, if the contempt consists solely of a past act, the only allowable judicial response is punitive, and any contempt adjudication must be criminal.

We can perceive no reason why this was an improper judicial response to Martorano's contempt. The act sought to be coerced, testimony before the grand jury, was capable of being performed prospectively. In no event was imprisonment to extend beyond the term of the grand jury. The court wisely exercised its discretion to attempt to coerce compliance before imposing punishment for noncompliance. See *Shillitani v. United States,* supra.[20] We conclude that the court's civil-contempt response to Martorano's contempt was within its inherent power to compel obedience to its order and was consistent with the nature and limitations of civil contempt. Martorano's argument to the contrary must be rejected.

Martorano further argues that the court was without jurisdiction over him because the subpoena summoning him to testify did not contain the official seal of the court but only the signature of the president judge. He cites two statutes [21] which he construes to provide that subpoenas that lack the court's seal are void and ineffective to compel attendance.

Martorano's counsel filed a motion entitled "petition to strike and/or set aside purported service of subpoena." The court heard testimony and argument on July 12 and, on August 8, denied the motion. Thereafter Martorano appeared whenever his presence was requested, indicating, however, that he appeared "specially" under a continuing objection to the subpoena.

It is important to note that Martorano is not a witness who was outside the reach of the court's jurisdiction [22] or

**20.** "[T]he trial judge [should] first consider the feasibility of coercing testimony through the imposition of civil contempt. The judge should resort to criminal sanctions only after he determines, for good reason, that the civil remedy would be inappropriate."
384 U.S. at 371 n. 9, 86 S.Ct. at 1536 n. 9.

**21.** Act of June 16, 1836, P.L. 784, § 22, 17 P.S. § 2079 (1962); Act of March 31, 1860, P.L. 427, § 32, 17 P.S. § 361 (1962).

**22.** Compare *In re Bruno,* 20 Pa.D.&C.2d 602 (Q.S. Philadelphia, 1958).

in any other way immune from the court's process. The only defect which he asserts, is the absence of a seal on an otherwise valid subpoena served on a person otherwise within the reach of the court's power. The only claim which legitimately could be asserted on behalf of a person served with such a subpoena is that he is unable to determine conclusively whether the process in fact was issued by or on behalf of the court.

When the witness does appear and learns that the subpoena did issue by the authority of the court, which Martorano learned no later than the denial of his motion to strike, the witness's only legitimate complaint as to the absence of a seal is completely cured. He has then learned directly from the court all that a seal would have told him. While the absence of a seal may constitute a defense to a prosecution for failure to appear in response to unsealed process, it is not available to attack the jurisdiction of the court over a witness who was otherwise within the reach of the court's power and does in fact appear.

Martorano next contends that, because the aggregate sentences imposed upon him in the two civil contempt proceedings exceeded six months, he was entitled to a jury trial. He cites the line of cases in the Supreme Court of the United States which holds that a contemnor is entitled to a jury trial when, in a single criminal contempt proceeding, the total sentence imposed exceeds six months. See *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966); see also *Commonwealth v. Mayberry*, 459 Pa. 91, 327 A.2d 86 (1974).

There are at least two fatal defects in this argument. First, it is clear that, in *criminal* contempt pro-

ceedings, there is no right to a jury trial when the sentence imposed does not exceed six months even when a series of contempt sentences, when aggregated, exceeds six months, as long as each is imposed in a "discrete and separate" proceeding. *Codispoti v. Pennsylvania*, supra, 418 U.S. at 514, 94 S.Ct. at 2692.[23] Surely a contemnor has no greater rights in a *civil* contempt proceeding. In this case, the two proceedings in which Martorano was adjudged in contempt were separated by sixteen months. See *Martorano Appeal*, 225 Pa.Super. 474, 310 A.2d 683 (1973). There can be no doubt that they were "discrete and separate" proceedings. Therefore, the sentence imposed in the prior proceeding cannot be aggregated with the present six-month-maximum sentence in order to entitle Martorano to a jury trial.

Second and more important, Martorano's argument must fail because there is simply no right to a jury trial in civil contempt proceedings.[24] The *Codispoti*

**23.** "Undoubtedly, where the necessity of circumstances warrants, a contemnor may be summarily tried for an act of contempt during trial and punished by a term of no more than six months. Nor does the judge exhaust his power to convict and punish summarily whenever the punishment imposed for separate contemptuous acts during trial equals or exceeds six months.

"That the total punishment meted out during trial exceeds six months in jail or prison would not invalidate any of the convictions or sentences, for each contempt has been dealt with as a discrete and separate matter at a different point during the trial."

**24.** *Shillitani v. United States*, supra note 10, 384 U.S. at 370–71, 86 S.Ct. at 1536; *United States v. Boe*, 491 F.2d 970, 971 (8th Cir. 1974) (dictum); *United States v. Handler*, 476 F.2d 709, 714 (2d Cir. 1973); *Bacon v. United States*, 446 F.2d 667, 668 (9th Cir. 1971), vacated on other grounds, 408 U.S. 915, 92 S.Ct. 2501, 33 L.Ed.2d 328 (1972); *Licata v. United States*, 429 F.2d 1177, 1180 (9th Cir.), vacated as moot, 400 U.S. 938, 91 S.Ct. 239, 27 L.Ed.2d 243 (1970); *Bata v. Central-Penn National Bank*, 448 Pa. 355, 375–76, 293 A.2d 343, 354 (1972); *East Caln Township v. Carter*, 440 Pa. 607, 613, 269 A.2d 703, 706 (1970); *Riccobene Appeal*, supra note 10, at 425, 268 A.2d at 116; *County of Cook v. Lloyd A. Fry Roofing Co.*, 59 Ill.2d 131, 138, 319 N.E.2d 472, 477 (1974); D. Dobbs, Handbook on the Law of Remedies § 2.9, at 95–96 (1973);

line of cases involved criminal adjudications of contempt, not, as this case, civil adjudications. The six-month line that divides criminal contempt proceedings into "petty" and "serious" for jury-trial purposes has no relevance to civil contempt proceedings; the only limitations on civil-contempt sentences are that they must be conditional and they may not exceed the period in which the contemnor is able to comply (here, the term of the grand jury). See e. g., *Shillitani v. United States*, supra (two years); *United States v. Handler*, 476 F.2d 709 (2d Cir. 1973) (16 months); *In re Bridge*, 120 N.J.Super. 460, 295 A.2d 3, cert. denied, 62 N.J. 80, 299 A.2d 78 (1972), cert. denied, 410 U.S. 991, 93 S.Ct. 1500, 36 L.Ed.2d 189 (1973) (no maximum).

Finally, Martorano argues that a second adjudication of contempt for refusing to answer similar questions before a grand jury investigating similar matters violates his right not to be placed twice in jeopardy for the "same offence."[25] This argument is without merit. Even if the Double Jeopardy Clause applied in civil contempt adjudications,[26] it is clear that it would not have been violated in this case. A witness could, consistent with the Double Jeopardy Clause, be subjected to a second *criminal* contempt adjudication in the circumstances of this case, for each separate and distinct refusal to testify, each occurring on a separate and discontinuous oc-

Dobbs, Contempt of Court: A Survey, 56 Cornell L.Rev. 183, 231–33 (1971).

25. U.S.Const. amend. V; see *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); cf. *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432, vacated and remanded, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), on remand, 455 Pa. 622, 314 A. 2d 854, cert. denied, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974).

26. See *Shillitani v. United States*, supra note 10, 384 U.S. at 371 n. 8, 86 S.Ct. at 1536 n. 8 (dictum); *United States v. Duncan*, 456 F.2d 1401, 1406–7 (9th Cir.), vacated on other grounds, 409 U.S. 814, 93 S.Ct. 161, 34 L.Ed.2d 72 (1972); Dobbs, Contempt of Court: A Survey, 56 Cornell L.Rev. 183, 243 (1971).

casion, is a separate offense for double-jeopardy purposes. *United States ex rel. Ushkowitz v. McCloskey,* 359 F.2d 788, 789 (2d Cir. 1966); *State v. Vickers,* Maine, 309 A.2d 324, 328–29 (1973); *Second Additional Grand Jury v. Cirillo,* 12 N.Y.2d 206, 210–11, 237 N.Y.S. 2d 709, 711–12, 188 N.E.2d 138, 140–41 (1963). A contemnor in a civil adjudication is surely entitled to no greater rights.

In accordance with the order of July 7, 1975, the order of the Superior Court is reversed; the order of the Court of Common Pleas of Philadelphia finding appellee in contempt of court is reinstated.

NIX, J., files a dissenting opinion in which EAGEN, J., joins.

MANDERINO, J., did not participate in the consideration or decision of this case.

NIX, Justice (dissenting).

In the instant case upon a filing of its petition the Deputy Attorney General, appellee's counsel and the supervising judge went into an anteroom at which time the stenographer read questions asked of appellee that day during the grand jury. Appellee's counsel was then asked to leave, but the Deputy Attorney General remained with the supervising judge for a short *in camera* hearing. These facts are similar to those in *In re Falone,* 464 Pa. 42, 346 A.2d 9 (1975), and I dissent here for the reasons expressed in my dissenting opinion in *In re Falone, supra.*

EAGEN, J , joins in this dissenting opinion.