School District of Pittsburgh, Pennsylvania *v.* Pittsburgh Federation of Teachers, Local 400, American Federation of Teachers, AFL-CIO et al., Appellants. (2 Cases)

Argued May 2, 1977, before President Judge Bow-
man and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Mencer, Rogers and Blatt. Judge Kramer did not
participate in the decision.

*Louis B. Kushner*, with him *Stephen H. Jordan, Sandra R. Kushner*, and *Rothman, Gordon, Foreman and Groudine*, for appellants.

*Persifor S. Oliver, Jr.* Assistant Solicitor, with him *Justin M. Johnson*, Solicitor, for appellee.

OPINION BY JUDGE BLATT, August 19, 1977:

On November 1, 1975, the appellants engaged in a strike against the appellee school district. On December 22, 1975, the appellee filed a complaint in equity seeking, in part, a preliminary injunction to be made permanent upon final hearing, which would enjoin the

strike pursuant to Section 1003 of the Public Employe Relations Act[1] (PERA), 43 P.S. §1101.1003. This section of PERA provides, *inter alia*, as follows:

> If a strike by public employes occurs after the collective bargaining processes set forth in sections 801 and 802 of Article VIII of this act have been completely utilized and exhausted, it shall not be prohibited unless or until such a strike creates a clear and present danger or threat to the health, safety or welfare of the public. In such cases the public employer shall initiate, in the court of common pleas of the jurisdiction where such strike occurs, an action for equitable relief including but not limited to appropriate injunctions and shall be entitled to such relief if the court finds that the strike creates a clear and present danger or threat to the health, safety or welfare of the public. . . . Prior to the filing of any complaint in equity under the provisions of this section the moving party shall serve upon the defendant a copy of said complaint as provided for in the Pennsylvania Rules of Civil Procedure applicable to such actions. Hearings shall be required before relief is granted under this section and notices of the same shall be served in the manner required for the original process with a duty imposed upon the court to hold such hearings forthwith.

On January 3, 1976, after five days of hearings, the lower court issued a decree, entitled "Decree Awarding A Preliminary Injunction," which provided in part, as follows:

> AND Now, to-wit, this 3rd day of January, 1976, plaintiff having presented its Complaint in Equity in open court and having moved for a

---

[1] Act of July 23, 1970, P.L. 563, *as amended.*

Preliminary Injunction, upon consideration thereof and after a full and complete hearing thereon wherein all parties have been afforded an opportunity to be heard, it is the finding of this Court that the strike of the defendants, and each of them, against the plaintiff creates a clear and present danger or threat to the health, safety or welfare of the public, and that the plaintiff is entitled to equitable relief including but not limited to an appropriate injunction.

Eleven paragraphs followed which were designed to effectuate the decree and which specifically enjoined the appellants from engaging in various activities. On January 5, 1976, the appellants appealed to this Court from the injunction, which appeal has been docketed at No. 46 C.D. 1976.

On January 5, 1976, the appellee filed a petition to institute contempt proceedings against the appellants because of their failure to comply with the injunction, and the lower court set the hearing on the petition for January 7, 1976, at which time, after a short continuance, the lower court held a hearing and found the appellants in contempt of court. The contempt order provided, in part, as follows:

AND Now, to wit, this 7th day of January, 1976, it is hereby ORDERED, ADJUDGED, and DECREED:

1. We find the defendants are in *willful civil contempt* of the Order of this Court which was issued on January 3, 1976, and they are *adjudged in civil contempt;* therefore the Rule to Show Cause is made absolute;

2. The Order is that defendants *purge themselves of civil contempt by discontinuing all acts and conduct which are in violation of the Order of this Court;*

3. We levy a fine in the sum of TWENTY-FIVE THOUSAND ($25,000) DOLLARS . . . because of defendant's *civil contempt; the obligation to pay the fine shall be suspended if there is compliance with the Court's Order as of the first scheduled school day following this Order;*

4. We further impose a fine in the sum of TEN THOUSAND ($10,000) DOLLARS . . . for the second scheduled school day of the defendants' civil contempt, if any; and a fine in the sum of TEN THOUSAND ($10,000) DOLLARS for each *civil contempt* for every scheduled school day thereafter during which Defendant-Local and its officers and members *continue to fail to comply with the preliminary injunction* dated January 3, 1976;

. . . .

7. It is Ordered that, if Defendant-Local and its members, *fails to purge itself of civil contempt, which means, if the membership of that Local fails to report for work on the next school day scheduled by the School District, following the issuance of this Order,* this first fine becomes due and payable as provided in said Order . . . . (Emphasis added.)

The lower court subsequently held additional hearings and issued eleven additional orders, ten of which levied fines upon the appellants for contempt of Court, and one final order consolidating the previous twelve orders for purposes of a consolidated appeal. The appellants have also appealed from these contempt orders and this appeal has been docketed at No. 1 T.D. 1976.

As to the appeal from the injunction, it must be noted that the strike was settled on January 26, 1976 and a new collective bargaining agreement was executed. This appeal (No. 46 C.D. 1976), therefore, is moot.

*Scranton School District v. Scranton Federation of Teachers,* 445 Pa. 155, 282 A.2d 235 (1971).

In their appeal from the contempt adjudications, the appellants first argue that the lower court erred when it concluded that the appellants were guilty of civil contempt, and not indirect criminal contempt, and that the appellants should have been accorded all of the rights granted by Section 1 of the Act of June 23, 1931, P.L. 925, 17 P.S. §2047 dealing with indirect criminal contempt.

It is clear that courts have the inherent power to enforce compliance with their lawful orders through civil contempt, *In Re Martorano,* 464 Pa. 66, 346 A.2d 22 (1975), and Section 1008 of PERA, 43 P.S. §1101. 1008, provides as follows:

> Where an employe organization wilfully disobeys a lawful order of a court of competent jurisdiction issued for a violation of the provisions of this article, the punishment for each day that such contempt persists may be by a fine fixed in the discretion of the court.

In *In Re Martorano,* 464 Pa. at 77-79, 346 A.2d at 27-29, our Supreme Court reviewed the test which may be used to determine whether a court had entered a decree of civil or criminal contempt, as follows:

> There is nothing inherent in a contemptuous act or refusal to act which classifies that act as 'criminal' or 'civil.' The distinction between criminal and civil contempt is rather a distinction between two permissible judicial responses to contumacious behavior. For example, it is clear that a contemptuous refusal to testify before a grand jury may be dealt with either a criminal contempt, civil contempt, or both.
>
> *These judicial responses are classified according to the dominant purpose of the court. If*

*the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication of contempt is civil.* If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal.

Dominant purpose of coercion or punishment is expressed in the sanction imposed. *A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order,* while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance. (Emphasis added, citations and footnotes omitted.)

An examination of the lower court's decree reveals that its purpose was to coerce the appellants into prospective compliance with the injunction. It is clear that the appellants could have complied with the injunction on January 8, 1976, *after* the lower court had determined that they were guilty of contempt, and not incurred any penalties at all. We will, therefore, affirm the lower court's conclusion that the appellants were guilty of civil contempt.

The appellants next argue that their contempt convictions may only be sustained if the underlying injunction was lawful, and they base this argument on what we believe to be a strained construction of Sections 1007 and 1008 of PERA.[2] To answer their con-

---

[2] Section 1007 of PERA provides as follows:

In the event any public employe refuses to obey an order issued by a court of competent jurisdiction for a violation of the provisions of this article, the punishment for such contempt may be by fine or by imprisonment in the prison of the

tention, it is sufficient to note that if either a public employe refuses to comply with, or an employe organization willfully refuses to obey, a lawful order of a court of competent jurisdiction issued for a violation of any of the provisions of Article X of PERA, a penalty for contempt may be imposed. Sections 1005, 1007 and 1008 of PERA, 43 P.S. §§1101.1005, 1101.1007, and 1101.1008. It is a well-established principle of law that

> [w]here the court has jurisdiction over the subject matter and the parties and has the authority or power to render the particular order or decree, the fact that such order or decree, violation or disobedience of which is made the basis of the contempt charge, is erroneous or irregular or improvidently rendered, does not justify the defendant in failing to abide by its terms, and his conduct in failing to do so may be punished as for contempt despite the error or irregularity. It is almost unanimously agreed that if the defendant desires to attack the order or the decree as erroneous, he must do so not by disregarding or violating it and then setting

---

county where the court is sitting or both in the discretion of the court. 43 P.S. §1101.1007.

The provisions of Section 1008 of PERA are contained in the text.

By calling attention to the presence of the word "lawful" in Section 1008, and the absence of such in Section 1007, the appellants argue that an employe organization may only be found in violation of a *lawful* order of court. This argument ignores Section 1005 of PERA which provides, *inter alia*, as follows:

> If a public employe refuses to comply with a lawful order of a court of competent jurisdiction issued for a violation of any of the provisions of this article the public employer shall initiate an action for contempt and if the public employe is adjudged guilty of such contempt, he shall be subject to suspension, demotion or discharge at the discretion of the public employer . . . .

43 P.S. §1101.1005.

the error up as a defense to a charge of contempt, but by a direct attack thereon by appeal or a motion to set it aside. He cannot attack it collaterally upon an appeal from the judgment of contempt or upon an application for habeas corpus to be released from imprisonment for contempt. He must obey it so long as it is in effect and until it is dissolved by the court issuing it, or reversed on appeal by the appellate court.

Annot., 12 A.L.R. 2d 1107 (1950); *Accord, Commonwealth v. Ryan,* 459 Pa. 148, 327 A.2d 351 (1974); *Bowers v. Reitz,* 315 Pa. 310, 172 A. 707 (1934).

Because the appellants have not challenged the *jurisdiction* of the lower court to grant the injunction, the validity of the contempt adjudications does not depend upon our determination of whether or not the underlying injunction was properly granted. Moreover, as has been said, the settlement of the strike and the execution of a new collective bargaining agreement have resolved the controversy between the parties and have rendered the appellants' appeal from the preliminary injunction moot.

The appellants further argue that the lower court erred when it determined that Pa. R.C.P. No. 1531 did not apply to the proceedings, which rule provides, in part, as follows:

(a) A court shall issue a *preliminary or special injunction* only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice. In determining whether a preliminary or special injunction

should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any proof which the court may require.

. . . .

(f) (1) *When a preliminary or special injunction involving freedom of expression is issued,* either without notice or after notice and hearing, *the court shall hold a final hearing* within three (3) days after demand by the defendant. A final decree shall be filed in the office of the prothonotary within twenty-four (24) hours after the close of the hearing. *If the final hearing is not held within the three (3) day period,* or if the final decree is not filed within twenty-four (24) hours after the close of the hearing, *the injunction shall be deemed dissolved.*

(2) When the defendant demands such a final hearing, no further pleadings shall be required and Rules 1517, 1518 and 1519(a) and (b) as to adjudication, decree nisi and exceptions thereto shall not apply.

(3) The trial judge shall file a written memorandum supporting the final decree within five (5) days after it is filed. (Emphasis added.)

Because one of the paragraphs of the lower court's injunction decree prohibited picketing in and around any school building wherein classes were being held, and because some picketing involves elements of free speech, *Altemose Construction Co. v. Building and Construction Trades Council of Philadelphia,* 449 Pa. 194, 296 A.2d 504 (1972), the appellants argue that: (1) Pa. R.C.P. No. 1531(f)(1) applies; (2) the failure of the lower court to hold a final hearing within three

days of its demand (demand was made on January 7, 1976 and refused on January 8, 1976) caused the injunction to dissolve by operation of the rule; and (3) contempt adjudications may not be based upon injunctions which have dissolved. Although we will affirm the lower court's determination that Pa. R.C.P. No. 1531(f)(1) did not apply in this case, we do so on the basis that the injunction was in fact neither a preliminary nor a special one within the scope of that section of the rule.

The purpose of a preliminary injunction is to afford relief prior to the adjudication of a controversy on its merits.

> Ordinarily, three prerequisites are essential to justify the issuance of a preliminary injunction. First, the issuance of the preliminary injunction is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, greater injury would result by refusing the preliminary injunction than by granting it; third, *until a final determination can be made,* the decree preserves the status quo and the rights of the parties as they existed immediately prior to the allegedly wrongful conduct. (Citation omitted, emphasis added.)

*American Federation of State, County and Municipal Employees v. Shapp,* 443 Pa. 527, 532-533, 280 A.2d 375, 376-377 (1971).

> A preliminary injunction is generally simply preventive, maintaining the status quo until the rights of the parties are determined after a full examination and hearing.

*McMullan v. Wohlgemuth,* 444 Pa. 563, 573, 281 A.2d 836, 841 (1971).

We believe that the injunction issued by the lower court in this case was in the nature of a final injunction or decree, not a preliminary one, because it contained a final adjudication on the merits of the only issue before the court: whether or not the strike should be prohibited pursuant to Section 1003 of PERA because it created a clear and present danger, or threat, to the health, safety or welfare of the public. The appellee was entitled by Section 1003 to petition the court for equitable relief including, but not limited to, appropriate injunctions. The lower court found that such dangers and threats had been created, issued a decision, which went to the merits of the controversy, prohibiting the strike, and the appellants appealed from that order. The lower court did not, therefore, err in refusing to apply Pa. R.C.P. No. 1531(f)(1) in this case.[3]

---

[3] Pa. R.C.P. No. 1531(f) (1) was added to the rules in response to our Supreme Court's decision in *Duggan v. 807 Liberty Ave., Inc.,* 447 Pa. 281, 288 A.2d 750 (1972). The court there stated that

[w]here a state seeks to exercise its power to prevent commercial dissemination of allegedly obscene material, it must establish precise objective standards by which a work may be judged, as well as procedural safeguards adequate to insure that constitutionally protected expression, which is often separated from obscenity by a dim and uncertain line, will not be abridged. See *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734 (1965).

The vigilance of the courts is commanded because of the danger of undue prior restraint and the possible chilling effect that regulation can inflict on the exercise of First Amendment freedoms. (Footnote omitted.)

*Duggan,, supra,* 447 Pa. at 288-289, 288 A.2d at 754-755.

The court there found that the Pennsylvania Rules of Civil Procedure were deficient because they did not designate when the *final* hearing must be held subsequent to the issuance of a preliminary injunction. The situation which existed in *Duggan, supra,* and which has been remedied by Pa.R.C.P. No. 1531(f) (1), was that a pre-

The appellants' final argument is that the lower court deprived them of due process when it refused to grant their motion for a continuance of the contempt hearing. It appears that the appellants were served with the petition charging contempt of court at 4:00 P.M. on January 5, 1976, that a hearing was scheduled for 10:00 A.M. on January 7, 1976, and that a continuance of three and one-half hours was granted at that time. In *Unger v. Sarafite*, 376 U.S. 575 (1964), the United States Supreme Court held that the matter of a continuance in a contempt proceeding was within the sound discretion of the trial judge and that every denial of a request for additional time did not violate due process. We are unable to find an abuse of that discretion here on the part of the trial judge. Counsel for appellants have asserted, and we believe, that three attorneys labored around the clock in order to prepare for the hearing on the question of contempt. While we believe that such hard work and dedication on the part of counsel is worthy of praise, we also believe that such effort was within the duty of counsel as officers of the court and was necessary and proper in view of the fact that an injunction had been issued which declared that the strike had created a clear and present danger, or threat, to the health, safety or welfare of the public. The trial judge, having determined that such a situation existed, was within his discretion in holding a hearing on January 7, 1976 and in refusing the motion for a further continuance.

---

liminary injunction could be issued which restrained the exercise of First Amendment freedoms (the dissemination of material which was allegedly obscene), without the guarantee of a prompt determination on the merits (whether or not the material in question was obscene and, therefore, whether or not it was entitled to constitutional protection). The appellants here received a final adjudication on the merits of the controversy after five days of hearings, and appealed therefrom.

The order of the lower court in No. 1 T.D. 1976 is affirmed, and the appellants' appeal in No. 46 C.D. 1976 is dismissed for mootness.

Judge MENCER concurs in decision only.

### ORDER IN 1 T.D. 1976

AND Now, this 19th day of August, 1977, the order of the Court of Common Pleas of Allegheny County, dated January 28, 1976, is affirmed.

### ORDER IN 46 C.D. 1976

AND Now, this 19th day of August, 1977, the appeal from the order of the Court of Common Pleas of Allegheny County, dated January 3, 1976, is dismissed.

CONCURRING OPINION BY JUDGE CRUMLISH, JR.:

While I agree with the final result in this case, I think it should be stressed that our holding must be limited to the narrow and unique factual situation that this case presents and that we do not wish to emasculate the distinction between final and preliminary injunctions. As stated by the majority, a preliminary injunction requires a balancing of the possible harm resulting to the defendant from the issuance of an injunction against the harm to the plaintiff were the injunction to be denied; the irreparable harm to the plaintiff if the injunction is not issued; and a clear right in the plaintiff to the relief sought. Here, the legal standards for a final injunction were met because a full and exhaustive hearing was, of necessity, required by the court below in its consideration of the factors enumerated above to resolve the question of whether the strike should be prohibited pursuant to Section 1003 of PERA.