IN RE SUBPOENA ISSUED TO EVAN SCHUMAN,
PETITIONER–RESPONDENT.

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. GARY J.
MAYRON, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued December 8, 1987—Decided January 28, 1988.

Before Judges MICHELS, SHEBELL and GAYNOR.

*Jared L. McDavit*, Assistant Sussex County Prosecutor, argued the cause for appellant State of New Jersey (*Richard E. Honig*, Sussex County Prosecutor, attorney; *Jared L. McDavit*, of counsel and on the letter brief).

*Arnold H. Chait* argued the cause for respondent Evan Schuman (*Vogel, Chait, Schwartz & Collins*, attorneys; *Arnold H. Chait*, of counsel and on the brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Pursuant to leave granted by this court, the State appeals from an order of the Law Division that quashed a subpoena *duces tecum* served upon petitioner Evan Schuman, a reporter for the *New Jersey Herald* to appear as a State's witness in the kidnapping-murder trial of Gary J. Mayron (Mayron).

On May 15, 1986, Mayron was indicted by the Sussex County Grand Jury and charged with kidnapping Susan Brennan, (*N.J. S.A.* 2C:13–1b), and with murdering her (*N.J.S.A.* 2C:11–3). Thereafter, a notice of aggravating factors was filed by the State alleging that the murder was outrageously and willfully vile, *N.J.S.A.* 2C:11–3c(4)(c) and was committed in the course of a kidnapping, *N.J.S.A.* 2C:11–3c(4)(g), thus designating the matter as a capital case. *See N.J.S.A.* 2C:11–3c(2); *R.* 3:13–4. On March 27, 1986, Mayron was arrested and thereafter incarcerated without bail. On April 8, 1986 and April 10, 1986, the *New Jersey Herald*, a daily newspaper of general circulation in northwest New Jersey, published front page articles written by Schuman in which he reported specific inculpatory admissions about the charges allegedly made to him by Mayron. The April 8, 1986 front page article contained the following headline: "Murder Suspect: 'I just lost it.'" The article, which was written by Schuman, elaborated:

In an interview with *The Herald* Monday, Mayron said he had sexual relations with Susan Brennan of Lake Hiawatha late last month and then beat her in a Parsippany motel room before beating her to death and leaving her in Sparta.

In the April 10, 1986 edition of *The Herald,* a second front page article appeared, also written by Schuman, which explained:

> In a follow up phone interview with *The Herald* on Tuesday, Mayron said he killed Brennan "out of a lot of hate and a lot of anger" for her because she had sex with him so soon after they had met.

And:

> "You just don't do that unless you love somebody", he claimed he told the girl as they drove from a Morris County motel to a wooded area of Sparta where he said he kicked and beat her while she pleaded with him.
>
> " 'Please don't kill me. I'm sorry,' " Mayron quoted the teenager as saying.

Further:

> "I didn't mean to kill her. Just to hurt her. She was in the place of my real mother", said Mayron, who was adopted. "And that's what I felt like doing to her" (his mother).
>
> "It was like physically it was me but mentally it wasn't. Anger and hate constantly controlled me for four or five hours."

The State issued subpoenas requiring Schuman to testify before the grand jury and at a pretrial motion to suppress, but those subpoenas were withdrawn without prejudice apparently after Schuman asserted the newsperson's privilege. Subsequently, Schuman was served with a subpoena to testify at the Mayron trial. However, Schuman moved to quash the subpoena based on the newsperson's privilege. In his affidavit supporting the motion, Schuman stated, in part, that:

> 4. The testimony I am to provide on behalf of the State was obtained solely and exclusively in the course of pursuing my professional activities as a reporter for the *New Jersey Herald.*
>
> 5. I have not been an eyewitness to any alleged act or offense the Defendant is accused of having committed.
>
> 6. There is a public perception that newspersons are immune from compulsory process. The belief that newspersons cannot be called upon to testify encourages the free flow of information between sources and reporters regardless of whether the sources request confidentiality. Compelled disclosure would decrease the flow of information available to the public because reporters will be ethically compelled to advise their sources that confidentiality may not be able to be guaranteed, or reporters will refrain from disclosing their sources.
>
> 7. The information sought by the subpoena is subject to the newsperson's privilege as set forth in *N.J.S.A.* 2A:84A–21 *et seq., Evid.R.* 27, which privilege I do hereby invoke and which information I thus respectfully refuse to disclose as a witness.

The trial court found that the privilege against disclosure was absolute. Even though the trial court concluded that the information sought to be elicited was not confidential, it decided to "err on the side of caution." We granted leave to appeal and now reverse.

The newsperson's privilege in New Jersey, commonly referred to as the "Shield Law," *N.J.S.A.* 2A:84A–21, *et seq.* affords newspersons a broad privilege against compulsory disclosure of the information they gather and the identities of the sources of that information. The statute, *N.J.S.A.* 2A:84A–21, as embodied in *Evid.R.* 27, following a significant amendment in 1977 (Amended by *L.*1977, *c.* 253, § 1; effective October 5, 1977), now provides, in pertinent part:

> Subject to Rule 37, a person engaged on, engaged in, connected with, or employed by news media for the purpose of gathering, procuring, transmitting, compiling, editing or disseminating news for the general public or on whose behalf news is so gathered, procured, transmitted, compiled, edited or disseminated has a privilege to refuse to disclose, in any legal or quasi-legal proceeding or before any investigative body, including, but not limited to, any court, grand jury, petit jury, administrative agency, the Legislature or legislative committee, or elsewhere:
>
> a. The source, author, means, agency or person from or through whom any information was procured, obtained, supplied, furnished, gathered, transmitted, compiled, edited, disseminated, or delivered; and
>
> b. *Any news or information obtained in the course of pursuing his professional activities whether or not it is disseminated* ... [Emphasis added].

*Evid.R.* 37 provides:

> A person waives his right or privilege to refuse to disclose or prevent another from disclosing a specified matter if he or any other person while the holder thereof has (a) contracted with anyone not to claim the right or privilege or, (b) without coercion and with knowledge of his right or privilege, made disclosure of any any part of the privileged matter or consented to such a disclosure made by anyone.
>
> A disclosure which is itself privileged or otherwise protected by the common law, statutes or rules of court of this State, or by lawful contract, shall not constitute a waiver under this section. The failure of a witness to claim a right or privilege with respect to one question shall not operate as a waiver with respect to any other question.

Schuman contends that his claim of privilege must be honored by virtue of subsection (b) of *N.J.S.A.* 2A:84A–21 (*Evid.R.*

27) which indicates that "information obtained in the course of pursuing his professional activities" is privileged "whether or not it is disseminated." He argues that the phrase "whether or not it is disseminated" prohibits a finding of waiver even when there is dissemination and that this provision renders *Evid.R.* 37, concerning waiver, inapplicable. He also argues that there would be no waiver under *Evid.R.* 37 because that rule provides, in part, that "[a] disclosure which is itself privileged or otherwise protected by the common law, statutes or rules of court of this state, or by lawful contract, shall not constitute a waiver under this section." *See N.J.S.A.* 2A:84A–29; *Evid.R.* 37. As a result, Schuman claims that because the communication is protected by subsection (b) which grants the privilege "whether or not [the information] is disseminated," there cannot be any waiver because the disclosure is itself privileged.

Resolution of this issue requires inquiry into the legislative history and evolution of the newsperson's privilege. The historical background and importance of the newsperson's privilege was thoroughly developed by Justice Pashman in *Maressa v. New Jersey Monthly*, 89 *N.J.* 176 (1982), *cert.* den. 459 *U.S.* 907, 103 *S.Ct.* 211, 74 *L.Ed.*2d 169 (1982). There, he explained:

Unlike most other privileges, however, a newsperson's privilege has a constitutional foundation. While narrowly upholding a grand jury's right to subpoena reporters, the United States Supreme Court has unanimously recognized that a reporter's gathering of information receives some First Amendment protection. *See Branzburg v. Hayes*, 408 *U.S.* 665, 691, 92 *S.Ct.* 2646, 2661, 33 *L.Ed.* 626 (1972) (opinion of White, J., joined by Burger, C.J., and Blackmun, Rehnquist, JJ.); *id.* at 709, 92 *S.Ct.* at 2670 (Powell, J., concurring); *id.* at 712, 92 *S.Ct.* at 2686 (Douglas, J., dissenting); *id.* at 725, 92 *S.Ct.* at 2694 (Stewart, J., dissenting, joined by Brennan and Marshall, JJ).

*Richmond Newspapers, Inc. v. Virginia*, 448 *U.S.* 555, 100 *S.Ct.* 2814, 65 *L.Ed.*2d 973 (1980), which recognized a First Amendment right to attend criminal trials, reinforced the newsperson's right to gather information:

whether we describe this right ... as a 'right of access' ... or a 'right to gather information,' ... we have recognized that 'without some protection for seeking out the news, freedom of the press could be eviscerated.' [448 *U.S.* at 576, 100 *S.Ct.* at 2827 (quoting *Branzburg v. Hayes*, 408 *U.S.* at 681, 92 *S.Ct.* at 2656; additional citations and footnote omitted) ].

\* \* \* \* \* \* \* \*

To buttress the constitutional protection for news gathering, the Legislature has amended the Shield Law, *N.J.S.A.* 2A:84A–21, twice in recent years. Both enactments were in large part responses to judicial construction limiting the effect of the statute. [89 *N.J.* at 184–185].

The Newsperson's Privilege, as originally adopted by our Legislature in *N.J.S.A.* 2A:84A–21, provided, in pertinent part, that:

Subject to Rule 37, a person engaged on, connected with, or employed by, a newspaper has a privilege to refuse to disclose the source, author, means, agency or person from or through whom any information published in such newspaper was procured, obtained, supplied, furnished or delivered. *L.*1960, *c.* 52, p. 458, § 21, eff. July 1, 1960.

Justice Pashman noted that by recent amendments our Legislature has strengthened and broadened that privilege:

The bill that ultimately led to the 1977 Shield Law amendments, *L.*1977, *c.* 253, was introduced shortly after the Appellate Division upheld incarceration of a newspaper reporter for his refusal to testify in *In re Bridge*, 120 *N.J.Super.* 460 (1972), *cert.* den. 410 *U.S.* 991, 93 *S.Ct.* 1500, 36 *L.Ed.*2d 189 (1973). There the court found that by disclosing the name of his source and some information received from the source, the reporter had waived his statutory privilege under the waiver provisions of *Evid.R.* 37, *N.J.S.A.* 2A:84A–29.

 &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

The Legislature responded to the finding of waiver in *In re Bridge* by creating separate privileges such that disclosure of information provided by a confidential source did not require the newsperson to identify the source. Beyond addressing the waiver issue, however, the Legislature thoroughly revamped the newsperson's privilege to make it more comprehensive. [89 *N.J.* 176, 185–186 (footnotes omitted) ].

In 1979, the Legislature again amended the privilege, this time in response to the Supreme Court's holding in *In re Myron Farber*, 78 *N.J.* 259 (1978), *cert.* den. *sub nom. New York Times Company and Myron Farber v. New Jersey and Mario E. Jascalevich*, 439 *U.S.* 997, 99 *S.Ct.* 598, 58 *L.Ed.*2d 670 (1978). After quoting *N.J.S.A.* 2A:84A–21 [as amended in 1977] Justice Pashman, in *Maressa*, continued and discussed the Shield Law as it reads today:

These amendments left no doubt that the Legislature intended to provide comprehensive protection for all aspects of news gathering and dissemination. The Court recognized this intent in *In re Farber*, holding:

We read the legislative intent in adopting this statute in its present form as seeking to protect the confidential sources of the press as well as information so obtained by reporters and other news media representatives *to the greatest extent permitted by the Constitution of the United States and that of the State of New Jersey.* [78 *N.J.* at 270 (emphasis added)].

Disclosure of confidential information was ordered in *Farber* only because the newsperson's privilege conflicted with a criminal defendant's constitutional right to compel the attendance of witnesses and production of evidence in his favor.

Following our decision in *Farber*, the Legislature again amended the Shield Law to grant newspersons increased protection in accord with constitutional limits. The new amendments established stringent prerequisites for judicial enforcement of a subpoena issued on behalf of a criminal defendant.

* * * * * * * *

Twice in recent sessions, the Legislature has made evident its intent to preserve a far-reaching newsperson's privilege in this State. And twice in recent terms, this Court has construed the Shield Law to protect confidential information to the extent allowed by the United States and New Jersey Constitutions. Absent any countervailing constitutional right, the newsperson's statutory privilege not to disclose confidential information is absolute. [89 *N.J.* 176, 186–187 (footnotes omitted)].

The 1977 amendments to the Shield law, literally read, provide a privilege from the disclosure of information notwithstanding dissemination of it in the media. However, the 1979 amendments substantially affected the privilege even though the 1979 amendments, *L.*1979, *c.* 479; *N.J.S.A.* 2A:84A–21.1 *et seq.*, were designed to develop procedures to be followed when a criminal defendant seeks information which a newsperson claims to be privileged under the Shield Law. *N.J.S.A.* 2A:84A–21.1 *et seq.* deals with proceedings when the defendant asserts a constitutional right to access notwithstanding the provisions of *Evid.R.* 27. In *N.J.S.A.* 2A:84A–21.3(b) the Legislature has provided that:

the party seeking enforcement of the subpoena shall show by clear and convincing evidence that the privilege has been waived under Rule 37(C. 2A:84A–29) or by a preponderance of the evidence that there is a reasonable probability that the subpoenaed materials are relevant, material and necessary to the defense, that they could not be secured from any less intrusive source, that the value of the material sought as it bears upon the issue of guilt or

innocence outweighs the privilege against disclosure, and that the request is not overbroad, oppressive, or unreasonably burdensome which may be overcome by evidence that all or part of the information sought is irrelevant, immaterial, unnecessary to the defense, or that it can be secured from another source. Publication shall constitute a waiver only as to the specific materials published.

In light of this provision, it cannot be suggested that the Legislature thought that *Evid.R.* 37, specifically referred to in *N.J.S.A.* 2A:84A–21.3, was not applicable. The Legislature expressly recognized that publication might constitute a waiver of the material published, but sought to limit the effect of that waiver so that it would not constitute a waiver of any information other than that disclosed. Consequently, we hold to the view that the State may subpoena a newsperson and ask him about information which he has disseminated and where, as here, the source has been identified, the newsperson may be questioned about the source and the circumstances under which the information was obtained.

Our holding here is consistent with *Maressa*, where, while making clear that the specific waiver provisions of the Shield Law must prevail over the general provisions embodied in *Evid.R.* 37, the Supreme Court also made clear that publication of privileged information constitutes a waiver of that specific information. As Justice Pashman stated:

Waiver under the Shield Law operates only as to those specific materials that are knowingly and voluntarily disclosed.

In arguing that defendants have waived their privilege, plaintiff points to the fact that defendant authors revealed that they based their article upon interviews with some 50 lobbyists, administrative officials, legislative liaisons, committee aids and Trenton journalists. This disclosure conceivably would have constituted a waiver before the 1977 Shield Law amendments, *see In re Bridge*, *supra*. The 1977 amendments, however, largely in response to the *Bridge* decision, tightened the requirements for waiver. The Legislature created separate privileges for sources and for information obtained in the course of pursuing professional activities. *N.J.S.A.* 2A:84A–21(a), (b). The privileges were intended to apply to every aspect of the news process. *Id.*

While the 1979 Shield Law amendments apply only to discovery requests by criminal defendants, the amendments give a clear indication of the Legislature's intent to narrow the scope of waiver in all proceedings. The 1979 amendments

provide that '[p]ublication shall constitute a waiver only as to the specific materials published.' *N.J.S.A.* 2A:84A–21.3(b), *L.*1979, *c.* 479. In criminal proceedings, each piece of confidential information from a source, or about the source, must be separately considered for purposes of finding a waiver of the newsperson's privilege. It is inconceivable that the Legislature intended a broader view of waiver in civil matters, where the public interest in disclosure is less compelling. *See Cashen* [*v. Spann* ], 66 *N.J.* [541] at 556. *We therefore hold that publication of privileged information constitutes a waiver only as to that specific information.* The waiver does not operate as to any non-disclosed information. [89 *N.J.* at 194–195 (footnote omitted); (emphasis added) ].

Contrary to Schuman's claim, *In re Vrazo Subpoena,* 176 *N.J.Super.* 455 (Law Div.1980), does not compel a contrary conclusion. There, a reporter for the *Philadelphia Bulletin* was subpoenaed to testify before the grand jury concerning an article she wrote based on information obtained from confidential sources, as well as personal surveillance revealing alleged payroll irregularities in Camden County. The Law Division judge there stated:

In the present case the source of her information has not been disclosed by Vrazo, and it is not disputed that the 'source' or subparagraph 'a' privilege of the present shield law, cited above, remains available. The prosecutor contends, however, that the 'information' or 'b' privilege has been lost by waiver relying upon *Rule* 37, since at least part of the privileged matter has been disclosed in the *Bulletin* article. The reporter, of course, relies upon the 'whether or not it is disseminated' clause of the 'b' privilege. To the extent there is an irreconcilable conflict, the 'b' privilege must prevail, since it results from a 1977 act of the New Jersey Legislature while the partial disclosure waiver paragraph (first paragraph) of *Rule* 37 was passed in 1960. *Brewer v. Porch,* 53 *N.J.* 167, 173 (1969); *2A Sutherland, Statutory Construction* (4 *Ed.* 1973, Sands), § *51.03. Rules* 27 and 37 are statutes *in pari materia,* however, and must be construed together to ascertain the legislative intent thereof. *State v. Brown,* 22 *N.J.* 405, 415 (1956). The apparent conflict disappears when the second paragraph of *Rule* 37 is also considered—since it provides that a disclosure that is itself privileged does not constitute a waiver of the privilege. *Rule* 27, as amended in 1977 to include the 'information' or 'b' privilege, provides that disseminated news or information is privileged if 'obtained in the course of pursuing his professional activities,' and this is undisputed. Accordingly, there has been no waiver of the newsperson's privilege by partial disclosure. [176 *N.J.Super.* at 461].

Thus, while at first blush *Vrazo* may give some comfort to Schuman, the trial court's opinion failed to address the applica-

bility of the 1979 amendments to the statutory privilege. Moreover, the Supreme Court implicitly rejected as inapplicable the *Vrazo* construction of waiver by holding that the "specific waiver provisions in the Shield Law must prevail over the general waiver provision [of *Evid.R.* 37], particularly since the Shield Law provisions result from a more recent act of the Legislature." *Maressa*, 89 *N.J.* at 195. In *Vrazo*, the trial court held that partial disclosure of information did not effectuate a waiver of the entire non-disclosed information. That precise holding is consistent with *Maressa* in which the Supreme Court found that publication constituted a waiver only as to the specific information knowingly and voluntarily disclosed. *Maressa*, 89 *N.J.* at 194–195. To the extent that *Vrazo* could be read as going further than its precise holding, we would disagree with it.

Finally, we point out that the phrase "whether or not it is disseminated" should not be read as providing an absolute privilege which nullifies the waiver provisions of the act. Rather, it must be read in conjunction with the 1979 amendments thus providing the privilege to all information remaining undisclosed. In our view, the Legislature never intended to grant an absolute privilege to information voluntarily disclosed but rather intended to protect that which remained undisclosed. "[P]ublication of part of the information obtained from a source no longer constitutes a waiver of the privilege with respect to *the rest of the information obtained.*" Current N.J.Rules of Evidence, Comment to *Evid.R.* 37 (Emphasis added). Publication of part of the information constitutes a waiver of only that specific matter. *See Maressa*, 89 *N.J.* at 195. Here, however, Schuman knowingly and voluntarily published specific information, along with the identity of its source and therefore waived the privilege with respect to that disseminated information.

Accordingly, we reverse the order quashing the subpoena *duces tecum* served upon Schuman.